In re GRAVES.

(District Court, D. Vermont. October 21, 1910.)

1. BANKRUPTCY (§ 253*)—AUTHORITY AND DUTY OF TRUSTEE—PURCHASE OF MORTGAGED PROPERTY.

Where a bankrupt was an indorser of a note, also secured by mortgage, and the creditor foreclosed the mortgage in the state court and obtained title to the property for less than the debt, the bankrupt's trustee was under no obligation and had no authority to buy the property from the claimant, nor to take it into his hands to handle and control as a part of the bankrupt's estate.

[Ed. Note.—For other cases, see Bankruptcy, Dec. Dig. § 253.*]

2. NEW TRIAL (§ 100*)—GROUNDS—NEWLY DISCOVERED EVIDENCE.

Where an alleged defect in the title to real property obtained by claimant in foreclosure proceedings was not disclosed in proceedings to determine the validity of the claim of the mortgagee against bankrupt, who was an indorser of the note secured by the mortgage, because claimant did not desire to disclose such defect to a prospective purchaser that he then had, such alleged defect in the title was not newly discovered evidence, and was therefore not available as a ground for new trial.

[Ed. Note.—For other cases, see New Trial, Cent. Dig. §§ 200–204; Dec. Dig. § 100.*]

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

3. BANKRUPTCY (§ 323*)—CLAIMS—LIABILITY OF BANKRUPT AS INDORSER—SE-
CURITY—VALUE.

Where a bankrupt indorsed a note which was also secured by a mort-
gage on real property of the maker, and the holder obtained full and com-
plete title to the property by foreclosure proceedings in the state court,
on a bid for less than the amount due on the note, the holder was entitled
to prove as a claim against the bankrupt's estate only the difference be-
tween the amount of the debt and the value of the property so obtained.

[Ed. Note.—For other cases, see Bankruptcy, Dec. Dig. § 323.*]

4. BANKRUPTCY (§ 340*)—CLAIM—BURDEN OF PROOF.

The burden is on a claimant in bankruptcy to prove not only the
amount of his claim, but to correctly prove any payments made thereon.

[Ed. Note.—For other cases, see Bankruptcy, Dec. Dig. § 340.*]

5. BANKRUPTCY (§ 225*)—CROSS-EXAMINATION OF WITNESS—MASTER.

On the trial of an issue as to the value of certain property before a
special master in bankruptcy proceedings, it was within the master's dis-
cretion to refuse a line of cross-examination of the trustee concerning his
knowledge or understanding of what the property could have been pur-
chased for and concerning efforts made by him to secure purchasers at a
price named.

[Ed. Note.—For other cases, see Bankruptcy, Dec. Dig. § 225.*]

6. EVIDENCE (§ 142*)—VALUE—OTHER LANDS.

On trial of an issue as to the value of certain land before a special mas-
ter in bankruptcy, evidence as to the appraisal of other contiguous lands
by the trustee, and as to the amounts received on sales of similar tracts
in the vicinity, was inadmissible in the absence of proof that the contig-
uous lands and the land sold were substantially of the same value, and
timbered in a substantially similar manner, as the land in controversy.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 416–423; Dec.
Dig. § 142.*]

7. EVIDENCE (§ 213*)—EFFORT TO AVOID LITIGATION.

Statements, oral or written, made in efforts to secure peace or avoid
litigation, are inadmissible in evidence.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 745–751; Dec.
Dig. § 213.*]

8. BANKRUPTCY (§ 226*)—REFERENCE TO MASTER—REPORT OF EVIDENCE—RE-
QUEST.

Where, on a hearing before a special master, in bankruptcy proceedings,
the records showed no request that the master should state in his report
the character of evidence offered by the trustee on which the master's
findings of value were based, or whether his findings were based on evi-
dence received under objection, the master's failure so to do was not
error.

[Ed. Note.—For other cases, see Bankruptcy, Dec. Dig. § 226.*]

In the matter of bankruptcy proceedings of Allen L. Graves, in
which Percival W. Clement filed a claim against the bankrupt as the
indorser of a note secured by a mortgage executed by the Vail Light
& Lumber Company. The special master reported against the allow-
ance of the claim, and claimant petitioned for review of said report and
for a new trial. Denied.

Holden & Healy, for claimant.
James K. Batchelder, for trustee.

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

MARTIN, District Judge. This is the same case that was before the court in July, 1908, reported 163 F. 358, 20 Am. Bankr. Rep. 818. The closing paragraph of that opinion reads as follows:

"The cause is referred back to the referee to find the balance due on said note after deducting the value of the property covered by said mortgage and taken under said decree. If the counsel for the trustee and the counsel for the claimant agree as to what the balance should be, the referee is instructed to report that fact, with the amount agreed upon, to the court."

The claimant requested the court to withdraw the reference from the then referee of Bennington county, as he had given his opinion that the property was worth at least $18,000, and therefore had partially prejudged the question pending. This request was granted by the court, and the name of Hon. A. E. Cudworth, referee for an adjoining county, was submitted to the parties and no objection made to his appointment. He is a lawyer of high standing and large experience at the bar, and also in the trial of cases as special master, auditor, referee in bankruptcy, etc. He heard the evidence and found that the mortgaged property that was taken on foreclosure by the claimant, sold at public auction, and bid off by an agent of the claimant, was worth $27,000. If this report of the special master is accepted, and that amount exceeds the amount due on the claimant's note, including costs and taxes paid on said land, then this claim should be disallowed.

The claimant now petitions the court for a new trial: First, for that he has been ready and willing to sell the property for a sum equal to the amount of the note, viz., $23,500. Second, for that there is some cloud on the title to the property which was not presented before the master because the claimant was then negotiating with prospective buyers and it might prevent a sale. Third, for that the special master's report of the value of the property is excessive, and that the claimant has offered to convey said property to the trustee, or any one else, for $23,500. Fourth, for that the claimant is entitled "to prove his claim in full against the estate of said Allen L. Graves in bankruptcy, and that likewise he is entitled to the full payment of said claim with interest to the date it is paid; such payment to be made first by applying, as of the date the same came into his possession, the property received by him upon the mortgage foreclosure at its cash value at that time, and then by dividends from the bankrupt estate, until said claim, with interest, is fully paid." And also prays that the court review the evidence, that he may find therefrom the property to be worth much less than the master has found it to be.

The first reason alleged in this petition was presented to the master on hearing, and all the circumstances connected therewith were before him. The trustee was under no obligations and had no authority to buy this property from the claimant or to take it into his hands to handle and control. The claimant foreclosed his mortgage in the state court, and obtained title to the real estate in question, sold it at public auction, and bid it in for less than the amount due on his note.

The second cause stated is somewhat peculiar. It is claimed that there is a defect in the title, known by the claimant at the time of the hearing before the master, but not called to his attention because of ne-

gotiations with a prospective purchaser. . Was the claimant going to sell and convey to that prospective purchaser and keep this cloud on the title hidden, or did he hope to overreach him, in some manner, by simply giving a quitclaim deed? Whatever may have been his intention, it can have no effect upon the court in granting a new trial, as it is not newly discovered evidence.

As to the third ground, I have carefully reviewed the evidence before the master, and from it I concur in his findings as to the value.

As to the fourth reason, the property being worth more than the amount due, the debt is paid, and that claim is without foundation. In argument counsel for the defendant criticised the holding of the court in Re Graves, supra, to the effect that:

"Having foreclosed on the property of another and obtained full and complete title thereto, he should have dividends only on the balance after deducting the value of the mortgaged property which he has received from said corporation, which is his principal debtor."

They have cited several authorities, but none of them are applicable to the facts in this case.

In the case at bar the Vail Light & Lumber Company executed the note and gave a mortgage on the property in question to secure its payment. The bankrupt was simply an indorser, and long before bankruptcy proceedings the claimant had foreclosed his mortgage in the state court without joining the bankrupt as a party thereto, had obtained a decree, and the equity of redemption had expired nearly a year preceding the bankruptcy proceedings of the endorser. The bankrupt court had no jurisdiction of the property so foreclosed, and at the time of the adjudication the title of the property pledged by the Vail Light & Lumber Company had been taken and the property converted by the claimant. There can be no claim against the bankrupt unless the amount due on the claimant's note exceeds the value of the property so taken. Under such a state of facts, there can be no lien resting upon the bankrupt's estate except for the balance due. It is wholly unlike the case of the Beaver Knitting Mills, 154 Fed. 320, cited by the claimant. In that case the Beaver Knitting Mills assumed the payment of the entire mortgage by a purchase of the mortgaged property and the property itself was in the hands of the court of bankruptcy.

Loveland (3d Ed.) p. 357, is cited:

"Where a maker and an indorser, whose liability is fixed, are both adjudged bankrupts, the whole debt, it seems, may be proved against either or both estates."

That is, the whole debt as it existed at the time of the filing of the petition in bankruptcy. If one-half, two-thirds, or any other fractional part thereof, was paid before bankruptcy proceedings, the whole debt is the amount then due and no more, and that amount only is provable against the bankrupt estate. The special master has found that the property pledged by mortgage, and taken by the claimant long preceding bankruptcy proceedings, was of greater value than the amount due on the note; thus the debt is paid, and there is nothing to be proved.

It is unnecessary to discuss the other cases cited, as they are equally inapplicable to the facts of this case.

The claimant has also filed exceptions to the report of the special master for errors made in the trial of the case:

First. For that the referee ruled that the burden of proof in the case was on the claimant. What the master ruled was this: That upon the files before him, furnished by Referee Sheldon, Mr. Clement stands relatively in the position of plaintiff and should present his proofs— "going ahead" in the presentation of evidence. It will be observed that Referee Sheldon held that the claimant had no standing in court and denied him the right to prove his claim. At the time that the special master made this ruling, the claimant had not proved his case at all. The ruling of the special master was correct. The claimant was, under the bankruptcy act, in duty bound not only to prove the amount of the note in question, but to correctly prove payments made thereon.

The second and third exceptions are that the special master excluded a certain line of cross-examination of the trustee, while on the stand as a witness before him, as to his knowledge or understanding of what the property in question could have been purchased for, and that he made efforts to secure purchasers at a certain price named. As an abstract proposition, without being present and knowing all the facts as they appeared before the master, it occurs to me that had I been trying the case I should have permitted this line of cross-examination; but that was discretionary with the master. The very fact that he excluded it makes it self-evident that it would have had no weight in disposing of the question that was before the master. These two exceptions are overruled.

Fourth, for the exclusion by the master of evidence offered of the appraisal upon oath by trustee Shaw of other lands contiguous to the lands in question. Having failed to show, or offered to show, that the contiguous lands in question were substantially of the same value, that they were timbered like the lands covered by this mortgage, or that they had been carefully examined by the witness, that class of evidence was inadmissible, and the master ruled correctly.

The claimant states in his fifth and sixth exceptions that the master excluded evidence by witness Parmenter of sales of similar tracts of land in the vicinity of the land in question, but the record of the testimony of the witness does not show the land covered by sales to be similar or in the vicinity of the land in question. When the witness was inquired of as to the value of the claimant's land, he stated that he knew somewhat of the "Clement tract."

"Have been on the easterly part; followed east line as blazed beginning at the southeast corner upon the Dufresne lot. No examination that would be of any particular value in this case—on June 15, 1906. * * * The hard wood I did not think much about. Price not based on that but to a small extent. Did not examine the west tier of lots. * * * That part of the Clement lot I saw in 1906 I don't know how I can answer as to the value of the timber on it. Location of westerly part of Clement lot was pointed out to me, and I observed it from a distance. Should say that $10 per acre

would be an extreme or rather fair value for it.  *  *  *  Should prefer the Aldrich tract. That is 16 miles from here and slopes mostly westerly."

It was the evidence of the selling price of the Aldrich lot that the master excluded. Evidently he did not find that it was in the immediate vicinity of the property in question, being 16 miles away, or that the witness was sufficiently familiar with the claimant's land in question to compare the value of the two properties.

Exception 7 is based upon the master's exclusion of evidence offered as to proposed compromises by the trustee with the claimant. This exception is not well taken. Statements, oral or written, made in efforts to secure peace or avoid litigation, have no place in the trial of a case.

The eighth and ninth exceptions are to the master's refusal to state in his report the character of evidence offered by the trustee on which his findings of value were based, or whether his findings were based upon evidence received under objection. The record does not show any such request to have been made.

Exception 10 is covered by the petition for a new trial, which I have heretofore referred to.

The case is referred back to Referee Sheldon on the finding of the special master that the value of the property in question is $27,000, which finding is approved by the court. All costs in this court, including the hearing before the special master and the special master's fees, are to be taxed by the clerk in favor of the trustee.