OKLAHOMA TURNPIKE AUTHORITY, Plaintiff in Error,

v.

Sophie FOSTER, Defendant in Error.

No. 40621.

Supreme Court of Oklahoma.

Jan. 12, 1965.

McKeever, Glasser, McKeever & Conrad, Enid, and Pierce, Mock, Duncan, Couch & Hendrickson, Oklahoma City, for plaintiff in error.

Purman Wilson, Purcell, for defendant in error.

BLACKBIRD, Justice.

This appeal arose out of an action commenced by plaintiff in error, hereinafter referred to as plaintiff, against the defendant in error, hereinafter referred to as defendant. Through it, plaintiff sought to acquire rights in and upon 5.54 acres of land out of a 15-acre tract in the Northeast Quarter of Section 10, Township 9 North, Range 4 West, undisputedly necessary for use in connection with the construction of the recently completed Southwestern Turnpike, extending from Oklahoma City to the Texas-Oklahoma boundary line northeast of Wichita Falls, Texas.

Although the tract is located in McClain County, it is only about 2 miles south of the Newcastle Bridge over the South Canadian River. It is inside the city limits of Oklahoma City; and is about 2 miles from said City's Will Rogers World Airport and FFA Center. Of the 5.54 acres, the surface rights of 3.41 acres were appropriated for the Turnpike right of way and the remaining 2.13 acres were taken for a highway easement to enable construction of a road affording access to said Turnpike.

In the Report of the Commissioners appointed by the trial court, defendant's damages, as a result of the appropriation, were assessed at the sum of $7,741.00. Both plaintiff and defendant filed demands for a jury trial. The verdict returned at the close of such trial, in December, 1962, fixed defendant's recovery at the sum of $11,-000.00. After the trial court's entry of judgment for defendant in conformity with said verdict, and the overruling of its motion for a new trial, plaintiff perfected the present appeal.

The single proposition urged by plaintiff for reversal of the judgment is that the verdict was excessive, and " * * * obviously the result of bias and prejudice." Since plaintiff's entire argument is based solely on the hypothesis that the verdict is not sufficiently supported by the evidence, the only real issue here is whether or not that hypothesis is correct. Plaintiff makes no claim that the amount of the verdict is greater than defendant's damages amounted to in the opinion of *all* of the witnesses, but, by calling our attention to some of the evidence, seeks, by inference at least, to critically reflect on the opinions of two

of the witnesses, Mr. Hunt and Mr. Bishop, whose qualifications as competent real estate appraisers are not in dispute. Mr. Hunt testified, among other things, that the market value of defendant's 15 acres, including the house and other improvements thereon, as of September 17, 1962, the conceded date of the taking, was $28,500.00. He further testified that defendant's property, reduced, after the taking, to include only 9.46 acres had a market value of only $13,570; the difference of $14,930.00 between the two figures being the amount of defendant's damages. Like Mr. Hunt, Mr. Bishop valued the 5.54 acres plaintiff was appropriating of defendant's 15 acres, at $1500.00 per acre, making a total loss to her of $8,310.00 for this item of damage. This witness estimated that, in consequence of the taking, the 9.46-acre property left to defendant afterward, was damaged at the rate of $500.00 per acre, for a total of $4,730.00, which, added to her aforementioned direct loss, amounted to a total of $13,040.00 in damages. It will thus be seen that the $11,000 verdict was less than defendant's total damages as appraised by both of the witnesses; and therefore was not without evidence to support her recovery of at least that amount.

■ A logical reason for the appraisals of defendant's damages by her witnesses being substantially higher than those of the plaintiff's witnesses appears to be their difference of opinion as to the highest and best use of the acrage involved. Because of its relatively small size, level terrain, good water supply, location inside the Oklahoma City limits and within easy driving distance on paved roads to Oklahoma City and certain new industrial plats and government installations in southwestern Oklahoma City, its proximity to a platted residential addition called "Choctaw Acres", etc., these witnesses expressed the opinion that the highest and best use of the defendant's property was for urban subdivision or suburban type of residential development. Plaintiff's witnesses disagreed, in the main, with the opinions of defend-

ant's witnesses, and, in arriving at their evaluations, apparently did not give much, if any, weight, or consideration, to the value of defendant's property for any but agricultural, or rural, uses. At least one of them stated that, in his opinion, the fact that the property was inside the city limits added nothing to its value. The conflict between his view of the matter and that of Messrs. Hunt and Bishop was properly the function of the jury to resolve. Also, plaintiff's witnesses apparently gave little, if any, consideration to the consequential damages defendant would suffer from the waste of suitable residential building sites that would result from the manner in which the Turnpike and its access road cuts through the corner of her property and leaves some of her remaining sites near a 20-foot-high earthen embankment. According to the evidence the latter fact weighs against the fact that defendant's acreage remaining after the taking will have more footage adjacent to paved roads than before.

■ We cannot conclude, as plaintiff's counsel apparently would have us, that because the appraisal of defendant's damages by her own witnesses was based largely, if not exclusively, upon certain previous sales of lots in Choctaw Acres—some of which contained only one-half acre each, but sold for as high as $800.00—their testimony does not furnish competent and adequate support for the verdict. Choctaw Acres is in the same quarter-section as the 15 acres involved here, and, though it has been platted, no city streets or other urban improvements have been installed in said addition. We think the evidence in this case gave the jury sufficient portrayal of the relative characteristics of these two parts of the same quarter section, that they were in a good position to decide what weight should be given lot sales in Choctaw Acres in determining values in defendant's 15 acres. And, the fact, emphasized by plaintiff, both at the trial and in its brief, that defendant's 15 acres had not yet been platted, did not preclude its adaptability for

use as a residential subdivision from being considered in arriving at its value, and determining the damages done to it for such use by plaintiff's appropriation and proposed construction. In this connection, notice the discussion in Cherokee Pipe Line Co. v. Jury, Okl., 393 P.2d 503, 505.

As we have found plaintiff's argument insufficient to warrant disturbing the judgment appealed from, same is hereby affirmed.

HALLEY, C. J., JACKSON, V. C. J., and JOHNSON, WILLIAMS, BLACKBIRD, IRWIN and BERRY, JJ., concur.