**LOFFLAND BROTHERS COMPANY, a Texas corporation, Appellee, Cross-Appellant,**

v.

**C.A. OVERSTREET, Appellant, Cross-Appellee.**

No. 60252.

Supreme Court of Oklahoma.

May 17, 1988.

**814**

Hastie and Kirschner by John W. Swinford, Jr., Oklahoma City, for appellee, cross-appellant.

Williams & Boren by Bart A. Boren, Oklahoma City, for appellant, cross-appellee.

DOOLIN, Chief Justice.

Appellant, cross-appellee, C.A. Overstreet ("Overstreet") appeals from the district court's judgment for appellee, cross-appellant, Loffland Brothers Company ("Loffland"), in an action to collect corporate funds advanced to the former employee under Loffland's Deferred Compensation Plan, 'Stimulate the Earnings Plan' ("STEP" or "Plan"). Overstreet also challenges the forfeiture of his accumulated benefits in the plan. Loffland appeals the denial of pre-judgment interest on the promissory notes executed by Overstreet. Since the underlying and "stipulated facts" are important to the resolution of the federal and pendent state issues presented herein, we set them forth in some detail.

## I. FACTS

Overstreet was employed by Loffland, an international oil and gas company, for 19 years, until he terminated his employment in May, 1981. As a Division Manager for Loffland's U.S. Mid-Continental Division, Overstreet was responsible for the productivity and performance of 21 drilling rigs, and the supervision of approximately 568 other employees. Overstreet's base salary was approximately $49,200.00 before he terminated his employment.[1]

In January 1973, Loffland's Board of Directors adopted a non-qualified deferred compensation plan, STEP, "whereby certain executive and management personnel may benefit directly from earnings of the company."[2] Loffland's purpose in enacting STEP was to encourage employee loyalty, help increase corporate profitability, and increase the employee's stake in those profits. When Overstreet terminated his employment, only 40 out of approximately 4,738 Loffland employees participated in STEP.[3]

STEP provides that participating employees could choose from two options as to the treatment of their deferred benefits:

(1) Collect 50 percent of the value of accrued benefits one year prior to the date such benefits are known with the other 50 percent forfeited, or

(2) Collect 100 percent of the value of the accrued benefits upon retirement, total and permanent disability, layoff, or death (The Final Step).

Thus, if an employee elects option one, after one year of service under STEP, the employee can immediately take a vested 50% of the sums due in cash, but loses the other 50%. If a STEP employee elects the second option, thereby deferring benefits,

---

1. In addition to his base salary, Overstreet received and was entitled to the following employee remunerations: Group medical and life insurance, life insurance for his spouse, vacation pay, the Five Fundamentals Plan for additional vacation allowance, paid holidays, a company car, paid membership in the Country Club and Petroleum Club, business-travel accident insurance, continuing education benefits, and educational assistance allowance, a book and magazine allowance. **Overstreet also participated in Loffland's Pension/Retirement Plan, funded by joint contributions from employer and employees.**

2. An employee's benefits under STEP are computed by a formula based on a number of variables, including time employed in a geographical region, the region's profits, and the value of Loffland's stock.

3. Employees selected to participate in STEP are designated by Loffland's Board of Directors, and within 30 days of such notification, selected employees could freely decline participation in STEP without any penalty.

the employee's interest is not immediately vested, but becomes 50% vested after a period of 10 years of continuous service. Upon the employee's retirement, total and permanent disability, layoff, or death, he (or his beneficiary) is entitled to collect 100% of the benefits within 15 months thereafter. However, if a STEP employee elects to take the 50% cash option during any one year, and thereafter switches to the second option, then one year is subtracted from the employee's years of service in STEP and one additional year is necessary to complete the ten-year vesting period.

The second option of the plan also provides for "advances" (loans) equivalent to 30% of the value of the deferred benefits of the preceding year, with the remaining 70% accruing in STEP until the employee's retirement, disability, layoff, or death. Loans made against a borrower's STEP account would become payable if employment with the company ceased. However, an employee could repay all advances loaned and thus increase the borrower's STEP account equivalent to the amount paid back.[4]

The relevant and disputed forfeiture provision of the plan provides:

> [S]hould the beneficiary at any time engage in any business or practice in competition with or prejudicial to the best interests of the Company or any Kendavis Industries company benefits will be permanently forfeited. Notwithstanding any provisions of STEP to the contrary, should a ... participant cease to be employed by the Company or any Kendavis Industries company for any reason other than death, total and permanent disability, layoff, or retirement, he automatically forfeits all units recorded in his account and receives no compensation for them. In addition, any advance made pursuant to STEP would become immediately due and payable.

Overstreet received a letter of eligibility for participation in STEP, and a copy of the plan at his office in June, 1977. Overstreet chose option two, intending to collect 100% of his benefits. He had several discussions regarding his accrued benefits under STEP with his employer's executive vice-president of domestic operations. Through numerous intra-company memoranda, Overstreet was informed of all changes in the provisions, rights and benefits under the employee benefit plan.

In May 1981, Overstreet's accrued benefits under STEP were approximately $188,574.00. However, on six separate occasions prior to 1981, Overstreet specifically requested and received six advances under STEP totalling $44,293.00 by executing six promissory notes. Each note provided for repayment, without interest, before Overstreet terminated his employment with Loffland.[5]

---

**4.** The following example illustrates the vested interest of three employees, (X, Y, & Z), under Loffland's deferred compensation plan. Employee X elected option one, and received 50% of his benefits in cash ($) after years one and two. X lost the other 50% for those respective years. Thereafter, X switched to option two under STEP, and two years are subtracted from X's years of service. As shown below, X's interest under option two becomes 50% vested after X has completed ten years of service (X's 12th year). X continues to work. Employee Y chose option two, and received advances (loans) during the first four years, but Y repaid those loans during years six-nine. At the end of Y's 10th year, 50% of Y's benefits are vested, thereafter, Y retires and is then entitled to receive 100% of the balance of his deferred compensation. Employee Z elected the 50% $ cash option each year, and forfeited the other 50%. At the end of Z's 12th year, Z dies, but Z's beneficiary is entitled to receive 50% of Z's benefits for the 12th year.

| COMPLETED YEARS OF SERVICE | VESTED INTEREST OF EMPLOYEES | | |
|---|---|---|---|
| | "X" | "Y" | "Z" |
| One | 50% $ | 0% (loan) | 50% $ |
| Two | 50% $ | 0% (loan) | 50% $ |
| Three | 0% | 0% (loan) | 50% $ |
| Four | 0% | 0% (loan) | 50% $ |
| Five | 0% | 0% | 50% $ |
| Six | 0% | 0% Credit | 50% $ |
| Seven | 0% | 0% Credit | 50% $ |
| Eight | 0% | 0% Credit | 50% $ |
| Nine | 0% | 0% Credit | 50% $ |
| Ten | 0% | 50% | 50% $ |
| Eleven | 0% | 100% | 50% $ |
| Twelve | 50% | Retires | Dies |

**5.** Overstreet borrowed the maximum amount available from his STEP account in 1976 ($3,943.78), 1978 ($6,479.15 in August and $2,662.24 in December), 1979 ($8,190.30), 1980

Several days before he 'terminated' his employment, Overstreet had entered into an employment contract with Midwest Energy Corporation, (Midwest), a competitor of Loffland. As a consequence, Loffland notified Overstreet that he automatically forfeited his remaining benefits under STEP, ($144,281.00), and the six advances he received ($44,293.00) were "immediately due and payable." Loffland brought this action to recover the advances loaned to (Overstreet), after the refused to repay the notes.

At trial Loffland asserted that Overstreet's employment contract with Midwest had a provision covering all monies Overstreet forfeited in STEP and which he would have to repay under the terms of the promissory notes. Overstreet denied that any consideration was given for the six promissory notes beyond those sums he was entitled to receive under STEP by virtue of his vested interest therein. He also asserted that the forfeiture provisions of STEP are unenforceable and void as a restraint of trade under Oklahoma law.[6] He argued that the employee benefit plan and the forfeiture of his benefits violated the Employment Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 et seq., which guarantees against forfeitures of "vested" profit-sharing and retirement benefits.

Overstreet claimed that Loffland misrepresented STEP to its employees, because the employer treated the benefits, on a yearly basis, as a substantial portion of the employee's salary. Through his cross-petition, he sought his accumulated benefits in STEP, and treble damages totalling $565,-724.61 under 79 O.S. (1981) § 25.[7] In the alternative, Overstreet requested $69,-986.00 in damages, this being the amount Overstreet would have received if he had elected to take 50 percent cash compensation out of STEP each year.

The trial court denied Overstreet's recovery on his counter-claims, found the six notes were unconditional promises to pay money, and awarded judgment, including attorney fees, costs, and interest for Loffland on the following facts and conclusions of law:

(1) The anti-competition clauses permitting forfeiture are valid under ERISA, and did not violate 15 O.S. (1981) § 217; 79 O.S. (1981) § 1 et seq., or any other public policy of this State;

(2) STEP is an employee benefit plan and exempt from coverage under ERISA's disclosure, reporting, lending limitations, and minimum participation and vesting standards;

(3) Overstreet was in a select group of highly compensated employees, and Loffland did not misrepresent the terms of

---

($9,526.54), and 1981 ($13,491.27). Each note provided:

I, the undersigned, promise to pay to the order of LOFFLAND BROTHERS COMPANY, a Texas corporation, at its office in Tulsa, Oklahoma, on or before the date of the termination of my employment with Loffland Brothers Company for any reason, including but not limited to my death or disability the sum of $(amount of each note), without interest.

This note is secured by a pledge of the undersigned's interest in Loffland Brothers Company's STEP Plan.

In the event default is made in the payment of this note at maturity, and it is placed in the hands of an attorney for collection, or suit is brought on the same, or same is collected through bankruptcy or probate proceedings, then the undersigned agrees that an additional amount of ten percent on the principal then due hereon shall be added to the same as collection fees.

/s/ C.A. Overstreet

6. Title 15 O.S. (1971) § 217 provides:
   Every contract by which any one is restrained from exercising a lawful profession, trade or business of any kind, otherwise than as provided by the next two sections, to that extent is void. 15 O.S. (1971) §§ 218, 219 are inapplicable to this case.
   Title 79 O.S. (1981) § 1 provides:
   Every act, agreement, contract, or combination in the form of trust, or otherwise, or conspiracy in restraint of trade or commerce within this state is hereby declared to be against public policy and illegal.

7. 79 O.S. (1981) § 25 provides in pertinent part:
   Any person, firm, corporation ..., who shall be injured in his business or property by any other ..., by reason of anything forbidden, or declared to be unlawful by this chapter, may sue therefor ..., and shall recover threefold the damages by him sustained, ....

the advances or the provisions of STEP to Overstreet;

(4) Overstreet had no vested rights to accrued benefits in STEP, because he had not participated in STEP for ten years; and

(5) Overstreet knew the advances would have to be repaid when he "voluntarily" terminated employment with Loffland; because, one, Overstreet never reported the loans as yearly income to the Internal Revenue Service (IRS); and two, the employee had entered into an employment agreement with Midwest which covered Overstreet for all benefits forfeited in Loffland's Plan and due under the terms of the notes.

Although the trial court's judgment was final as to all other issues, we directed the parties to cure a deficiency in the record which was ambiguous and unclear, regarding the payment of pre-judgment interest on the notes.[8] Rules on Perfecting a Civil Appeal, 12 O.S. 1981, Ch. 15, App. 2, Rule 1.24(b). Thereafter, in an application to clarify the judgment, Loffland requested and the trial court denied pre-judgment interest, "because the notes provided 'without interest'." Both parties appeal. Further facts will be stated in the opinion.

## II. STANDARD OF REVIEW

■ When facts are presented to the trial court by stipulation, depositions, and other documentary material, this Court is free to substitute its analysis of the record for the trial court's analysis. Since there is nothing to weigh as to the credibility of the witnesses, as a court of first instance, we shall accordingly render such judgment as the trial court should have rendered.[9]

## III. ISSUES PRESENTED

A. Is the Non-competition/forfeiture provision of STEP valid under ERISA, and if federal law does apply, is STEP exempt from coverage under ERISA's Participation and Vesting Requirements?

B. Did Loffland misrepresent and improperly administer STEP?

C. Is Loffland barred from recovering pre-judgment interest on the promissory notes?

## IV. DISCUSSION

A. Validity of the Non-competition/Forfeiture Provision of STEP under ERISA.

(1) Federal Law Preempts State Law.[10]

■ A primary purpose of ERISA is to protect participants in employee benefit plans by ensuring that such employees do not lose vested benefits due to "unduly restrictive" forfeiture provisions.[11] "ERISA establishes that '[e]ach pension plan shall provide that an employee's right to *his normal retirement benefit* is non-forfeitable upon the attainment of normal retirement age.' 29 U.S.C. § 1053(a)." [12] (Emphasis added by this Court.) Thus, Congress has required such plans "to vest the accrued benefits of employees with significant periods of service, . . . ." 29 U.S.C. § 1001(c). Both parties agree with the trial court that STEP is an "employee benefit plan" as defined under the provisions of ERISA. 29 U.S.C. § 1002(3). There can be no doubt that ERISA applies to STEP, because Loffland, an international oil and gas company, is "engaged in commerce". 29 U.S.C. § 1003.

Overstreet contends that STEP specifically falls under Title 29 U.S.C. §§ 1052,

---

**8.** See e.g., *Huff v. Huff,* 687 P.2d 130, 132 n. 3 (Okl.1984).

**9.** *Consolidated Steel & Wire Co. v. Burham,* 8 Okl. 514, 58 P. 654 (1899); *Rist v. Westhoma Oil Co.,* 385 P.2d 791 (Okl.1963). See also, *U.S. Fidelity & Guar. Co. v. Wyer,* 60 F.2d 856 (10th Cir.1932), cert. denied, 287 U.S. 647, 53 S.Ct. 93, 77 L.Ed. 560.

**10.** The Miscellaneous Provisions of STEP provide: "This agreement will be interpreted in accordance with the laws of the State of Texas." This issue was not argued by the parties below. Since the district court did not consider this issue, thus avoiding the realm of conflicts of law, we shall do likewise.

**11.** *Hummell v. S.E. Rykoff & Co.,* 634 F.2d 446, 448 (9th Cir.1980).

**12.** *Alessi v. Raybestos–Manhattan, Inc.,* 451 U.S. 504, 510–511, 101 S.Ct. 1895, 1900, 68 L.Ed.2d 402 (1981).

1053; Part 2 of ERISA covering minimum participation and vesting standards for employee benefit plans. He places great reliance on the case of *Graham v. Hudgins, Thompson, Ball & Associates, Inc.,*[13] to support his proposition that Oklahoma law should govern the results of this case. He then argues that the forfeiture provision is inequitable, void under 15 O.S.1981 § 217, and violates this State's public policy concerning standards of employment proprieties.

Loffland admits that its forfeiture provision "appears to violate" § 217. But employer contends that this Court should strike the first sentence of the provision, and uphold the latter, because the forfeiture of 'expectant' or 'accrued' deferred compensation does not violate any Oklahoma law or public policy.

Under the view adopted in this jurisdiction, contractual provisions restraining an individual from accepting competitive employment are generally void as contrary to public policy. The preceding rule has been so frequently and forcefully stated that a marshalling of our decisions on the point is unnecessary. Obviously, in the instant case, we are confronted with a covenant not to compete. However, both parties' reliance on the law in this regard must fail.

"Congress has unmistakably so ordained,"[14] with the following "unambiguous congressional mandate,"[15] that ERISA shall preempt "all State laws (decisions, rules, regulations, or other State action having the effect of law, of any State) insofar as they may now or hereafter relate to any employee benefit plan...." 29 U.S.C. § 1144(a). In the preceding sentence, we added the parenthetical quote from § 1144(c) to show that "ERISA makes clear that even indirect state action bearing on private pensions may encroach upon the area of exclusive federal concern."[16] This section took effect on January 1, 1975, with other provisions covering forfeitures, § 1053(a)(3)(A)–(D), which were made effective on January 1, 1976. 29 U.S.C. § 1061(b)(2).

Loffland's claim arose when Overstreet voluntarily left his employment in May, 1981. Since Congress has "established pension plan regulation as exclusively a federal concern,"[17] limited only by the scope of ERISA itself, we conclude that the district court correctly decided that ERISA preempted Oklahoma law and that federal law governs the validity of the forfeiture provision of STEP. In the instant case, our analysis of the issues "must be guided by respect for the separate spheres of governmental authority preserved in our federalist system."[18]

Under the facts and circumstances of this case, we find that this State's laws are applicable only to Loffland's action to collect company funds loaned to Overstreet, as provided by the terms of the promissory notes.

## (2) Is STEP Exempt from ERISA's Participation and Vesting Requirements?

■ Title 29 U.S.C. § 1053(a)(2)(A)–(C) sets out three alternative minimum vesting schedules, the ten-year and graded fifteen-year service plans, and the rule of 45, for employee benefits plans governed by ERISA. Overstreet argues, without any specificity, that his rights under STEP were nonforfeitable and vested under this statute. Loffland contends that STEP is exempt from complete coverage under ERISA due to an exemption set out in 29 U.S.C. § 1051(2),[19] which provides in pertinent part:

13. 540 P.2d 1161 (Okl.1975).

14. *Florida Lime & Avocado Growers, Inc. v. Paul,* 373 U.S. 132, 142, 83 S.Ct. 1210, 1217, 10 L.Ed.2d 248 (1963).

15. Id., at 147, 83 S.Ct. at 1219.

16. *Alessi,* 451 U.S. at 526, 101 S.Ct. at 1907.

17. Id., at 523, 101 S.Ct. at 1905.

18. Id., at 522, 101 S.Ct. at 1905.

19. The same language appears in 29 U.S.C. §§ 1081(a)(3) and 1101(a)(1), which also exempts unfunded deferred compensation plans from Parts 3 and 4 of ERISA covering minimum funding standards and fiduciary duties.

This part [29 USCS §§ 1051 et seq.] shall apply to any employee benefit plan described in section 4(a) [29 USCS § 1003(2)] (and not exempt under section 4(b) [29 USCS § 1003(b)] other than ... (2) a plan which is unfunded and is maintained by an employer primarily for the purpose of providing deferred compensation for a select group of management or highly compensated employees; ....

We must determine whether Loffland is entitled to claim this exemption from coverage under ERISA's vesting standards. Thus, the threshold questions are: one, whether STEP is "unfunded"; two, whether STEP is maintained by Loffland primarily for providing "deferred compensation"; and three, whether STEP is primarily for a "select group" of management or highly compensated employees.

On appeal Overstreet argues unpersuasively that STEP is not exempt, because Loffland established a "reserve for these funds," and that participants under STEP have *"preferred status"* under the plan *"if* Loffland were to become insolvent." (Emphasis added.) The first half of Overstreet's assertion is wholly unsupported by the record. The second half is meritless, because Loffland's insolvency is a wholly speculative matter not raised below and this Court does not consider abstract principles of law or hypothetical questions which do not arise upon the facts or rights presented.[20]

Although ERISA does not define "unfunded," we are guided by the Eighth Circuit Court of Appeals' decision in *Dependahl v. Falstaff Brewing Corp.,*[21] in determining whether Loffland's plan qualifies as being an unfunded employee benefit plan. In *Dependahl,* the district court analyzed ERISA, its legislative history, and regulations issued by the United States Department of Labor, which is primarily responsible for promulgating ERISA regulations. The district court concluded:

This regulation [29 C.F.R. § 2520.104.20], along with others, also seem to equate "unfunded" with payment of benefits from the employer's general assets. (Parenthetical added). *Dependahl v. Falstaff Brewing Co.,* 491 F.Supp. 1188, 1195 (E.D.Mo.1980).

The Eighth Circuit affirmed this section of the district court's opinion.

We agree with the District Court's conclusion.... Funding implies the existence of a res separate from the ordinary assets of the corporation. *Dependahl,* 653 F.2d at 1214.

See also, *Belka v. Rowe Furniture Corp.,* 571 F.Supp. 1249 (D.Md.1983), and *Belsky v. First Nat'al Life Ins. Co.,* 818 F.2d 661 (8th Cir.1987).

We find these opinions persuasive because first, Loffland's employee benefit plan provides that: "[b]enefits payable under STEP will be reduced by benefits payable by the Company that are not a part of a Company announced benefit plan," indicating that payment will be made from general company funds. Second, Loffland filed a copy of STEP with the IRS as an unfunded plan. Third, employer also filed a statement of an alternative form of compliance with the reporting and disclosure requirements of Part 1 of Title 1 of ERISA, pursuant to 29 C.R.F. § 2520.104–23, with the United States Secretary of Labor; wherein Loffland stated: "Benefits are paid as needed solely from the assets of the employer." Finally, all advances loaned to Overstreet were paid out of Loffland's "general account." This Court must conclude, as did the district court, that here the plan is unfunded within the meaning of § 1051.

Overstreet admits that Loffland does maintain STEP for the purpose of providing deferred compensation. Thus the remaining and decisive question is whether the employee benefit plan is "primarily" for a "select group" of Loffland employees

---

**20.** *Freeman v. Board of Medical Examiners for Southern Dist. of Indian Territory,* 20 Okl. 610, 95 P. 229 (1908); *Munger v. Elliott,* 187 Okl. 19, 100 P.2d 876 (1940); *Rogers v. Excise Bd. of Greer County,* 701 P.2d 754 (Okl.1984).

**21.** 653 F.2d 1208, (8th Cir.), cert. denied, 454 U.S. 968, 102 S.Ct. 512, 70 L.Ed.2d 384 (1981).

who are either management or highly compensated.

Overstreet challenges the sufficiency of the evidence determining that he was a highly compensated employee while employed at Loffland. He urges that this Court, in determining

> what is highly compensated in regard to the case at bar, must take into consideration salary levels for like positions, and further must determine whether or not some of the lower level employees could be effectively grouped with some higher level employees which this Court may deem to be highly compensated, but may not find that these lower level employees are highly compensated. In other words, if there are some participants in the STEP PLAN which this Court finds not to be highly compensated employees, then the entire plan does not fall within the scope of these exemptions; ...

This argument, unsupported either by facts or citation of authority, is without merit and the same will be treated as waived.[22] In the absence of evidence as to salary levels for 'like positions, lower and higher level employees' in the oil and gas industry and at Loffland, the district court properly rejected Overstreet's contention. We perceive no sound reason or logical basis to support this argument for the record is wholly void of such information.

We refuse to disturb the district court's finding, because whether Overstreet was highly compensated in 1981 is an issue of fact. And on nonjurisdictional issues we will accept as binding the trial court's finding of facts which are supported by competent evidence.[23] Although we agree with the conclusion reached by the district court, we also observe a different route to the same conclusion.

Our reading of § 1051(2), contrary to that of Overstreet's, indicates that this line of reasoning ignores the plain analysis of the federal statute. The disjunctive language of § 1051(2), "a select group of management *or* highly compensated em-

ployees," (our emphasis), which of course, controls, neither suggests nor supports Overstreet's proposition. In *Belka v. Rowe Furniture Corp.*, supra, the district court held that a deferred compensation plan covering 4.6% of Rowe's total employees was within the meaning of a "select group." Here, Loffland employs approximately 4,738 employees worldwide, and only a very small percentage: 0.844%, were STEP participants. We find Overstreet was a member of a "select group" of management within Loffland's corporate structure. In summary, we conclude that benefits under STEP are not funded by any separate account with a clearly segregated res; nor is STEP a part and parcel of all employees' compensation with Loffland; that is, STEP is not a basic pension plan, but rather an employee benefit plan for Loffland's executive and management personnel.

Overstreet contends, principally on public policy grounds, that this Court should award all his benefits in STEP as being earned and "vested" in consideration of his employment with Loffland. This simplistic argument is not well taken. Under the terms of the plan involved in this case, Overstreet, in May 1981, had no vested rights. With less than four years of continuous service in STEP, Overstreet failed to comply with the essential condition entitling him to a 'vested' 50%, namely completing ten years under STEP. Further, after his first year under STEP, Overstreet could have elected to receive a 'vested' 50% of his benefits in cash each year for a total of $69,986.00. But unfortunately, he did neither.

> A "vested right" is the power to do certain actions or possess certain things lawfully, and is substantially a property right, and may be created either by common law, by statute, or by contract. And when it has been once created, and has become absolute, it is protected from invasion.... *Baker v. Oklahoma Firefighters and Retirement System*, 718 P.2d 348, 350 (Okl.1986)

**22.** *Tiger Flats Production Co., Inc. v. Oklahoma Petroleum Extracting Co.*, 711 P.2d 106, 108 (Okl.1985).

**23.** *Thomas v. Keith Hensel Optical Labs*, 653 P.2d 201, 203 (Okl.1982).

We find support for our conclusion in *Alessi*,[24] where the United States Supreme Court, quoting *Nachman Corp. v. Pension Benefit Guaranty Corp.*,[25] "observed that Congress through ERISA wanted to ensure that 'if a worker has been promised a defined pension benefit upon retirement—and *if he has fulfilled whatever conditions are required to obtain a vested benefit* —... he actually receives it'." (Emphasis added.) ERISA does not prohibit forfeiture of benefits in excess of the minimum vesting requirements, as found in 29 U.S.C. § 1053.[26] Nor does ERISA impose any obligation on an employee benefit plan to pay benefits to an employee before the employee reaches retirement age.[27] Further, if the employee has any vested benefits, the employee's right to receive such benefits must be found in the plan itself.[28]

STEP is exempt from ERISA's minimum participation and vesting requirements. Nevertheless, the plan provides selected Loffland employees with a profit sharing option greater than the minimum vesting requirements of ERISA, because 50% of an employee's cash benefits are nonforfeitable each year prior to ten years of service. We conclude that benefits exempt from the minimum participation and vesting requirements of ERISA can be forfeited due to violation of a non-competition clause. Thus we affirm the district court's conclusion that Overstreet's unvested benefits in STEP may be forfeited.

**B. Loffland's Presentation and Administration of STEP.**

■ Overstreet alleges that Loffland's misrepresentation and improper adminis-

tration of STEP "violates public policy and equity as to what is permissible conduct and appropriate relationships between employer and employee." Overstreet contends that Loffland failed to disclose pertinent provisions of STEP, treated benefits as part of the participant's annual salary, failed to educate its employees as to the terms and various options available, and improperly administered advances (loans) under the plan by requiring the execution of promissory notes. These claims, however, are *wholly* unsupported by the record.

We find, as did the trial judge, no evidence of any intentional false statement respecting any provision of STEP made or withheld by Loffland to its employees. Loffland complied with 29 U.S.C. § 1022, which requires an employer to provide plan participants with a summary description setting forth the circumstances resulting in the employee's disqualification, ineligibility, denial, or total loss of benefits. There is no evidence that Loffland violated any fiduciary duty explicitly covered by Part 4 of ERISA. Nor is there any evidence that Overstreet was refused an answer to any question concerning his rights, and benefits under STEP.

Overstreet's rights, if any, under Loffland's employee benefit plan are governed solely by the lawful terms of the plan itself.[29] Since he did not comply with the plan's primary condition of eligibility, a condition precedent to the acquisition of rights thereunder, he had no rights. Further, the mere crediting upon Loffland's

**24.** 451 U.S. at 510, 101 S.Ct. at 1899.

**25.** 446 U.S. 359, 375, 100 S.Ct. 1723, 1733, 64 L.Ed.2d 354 (1980).

**26.** *Fremont v. McGraw-Edison Co.*, 606 F.2d 752, 760 (7th Cir.1979), cert. denied, 445 U.S. 951, 100 S.Ct. 1599, 63 L.Ed.2d 786 (1980); *Noell v. American Design, Inc., Profit Sharing Plan*, 764 F.2d 827, 831 (11th Cir.1985).

**27.** *Sutton v. Weirton Steel Div. of Nat. Steel Corp.*, 724 F.2d 406 (4th Cir.1983), cert. denied, 467 U.S. 1205, 104 S.Ct. 2387, 81 L.Ed.2d 345; *Chambless v. Masters, Mates & Pilots Pension*

*Plan*, 602 F.Supp. 904 (S.D.N.Y.1984), aff'd 772 F.2d 406 (4th Cir.), cert. denied, 475 U.S. 1012, 106 S.Ct. 1189, 89 L.Ed.2d 304 (1986).

**28.** "[W]hat defines the content of the benefits that, once vested, cannot be forfeited? ERISA leaves this question largely to the private parties creating the plan. That the private parties, not the Government, control the level of benefits is clear from the statutory language defining nonforfeitable rights as well as from other portions of ERISA." *Alessi*, 451 U.S. at 511, 101 S.Ct. at 1900.

**29.** Id.

books to Overstreet's STEP account before actual payment does not give Overstreet a vested right, nor any entitlement to the sum noted.[30] In the absence of evidence as to Loffland's bad faith, caprice or arbitrariness, in its presentation and administration of STEP, the district court correctly rejected Overstreet's contentions.

### C. Is Loffland barred from recovering prejudgment interest?

■ Loffland argues that the district court abused its discretion by denying prejudgment interest, because one, Overstreet's free use of corporate funds, after he voluntarily terminated his employment was not within the contemplation of the parties; two, such unjustly enriches Overstreet and is contrary to the intent of 15 O.S. (1971) § 275;[31] and three, Loffland is substantially injured and deprived of the damages available under 23 O.S. (1971) § 22.[32]

Overstreet claims that the trial court could not award pre-judgment interest to Loffland, because Loffland's petition did not request such relief and the notes specifically provided "without interest." Overstreet asserts that Loffland is barred from requesting pre-judgment interest for the first time on appeal. Overstreet then unpersuasively argues that since Loffland's recovery of the loans was in dispute, and when that is combined with Overstreet's cross-petition and demands for relief, Loffland was therefore seeking "unliquidated damages." Thus, Overstreet alleges that such unliquidated damages are not subject to the " 'tacking on' of pre-judgment interest."

It is undisputed that Overstreet requested and borrowed money from Loffland by executing six promissory notes. Overstreet promised to repay the money, without interest, on or before the date he terminated employment with Loffland. Thus, Loffland pleaded and established a valid and subsisting debt against Overstreet, under this State's laws.[33]

Loffland's petition did not expressly request pre-judgment interest. Nevertheless, when such interest is recoverable by virtue of a statute, no prayer for such relief is necessary.[34] Further, in this case, the question of Loffland's entitlement to pre-judgment interest was thoroughly argued and briefed in the trial court at this Court's direction. Thus, we conclude that Loffland is not barred from recovering pre-judgment interest on the promissory notes.

"[A]n award of interest for the detention of payment is made by way of damages. And it is a rule of general recognition by the courts and obtains in this jurisdiction that where there is a contract to pay money on a day certain, or on a day not set but ascertainable from the terms of the contract, interest will be allowed from such date." [35] The mere fact that the notes provided "without interest" has no bearing on Loffland's right to recover damages for Overstreet's failure to pay the amounts by the due date. Because interest after maturity of the notes is not pursuant thereto, but is recoverable by way of damages as a matter of law, this Court has the power to determine the damages and render judgment accordingly.[36]

Overstreet voluntarily terminated his employment with Loffland on May 31, 1981. He knew the six notes he knowingly exe-

---

**30.** Id.

**31.** Title 15 O.S. (1971) § 275 provides:
Any legal rate of interest, stipulated by a contract, remains chargeable after a breach thereof, as before, until the contract is superseded by a verdict or other new obligation.

**32.** Title 23 O.S. (1971) § 22 provides:
The detriment caused by the breach of an obligation to pay money only is deemed to be the amount due by the terms of the obligation, with interest thereon.

**33.** *Hedlund v. Brogan,* 167 Okl. 393, 30 P.2d 164 (1934); *Reeves v. Jenkins,* 439 P.2d 941 (Okl. 1968).

**34.** *Blackwell Oil & Gas Co. v. Mid-Continent Petroleum Corp.,* 182 Okl. 588, 79 P.2d 227 (1937).

**35.** *Fidelity-Phenix Fire Ins. Co. of New York v. Board of Education of Town of Rosedale,* 204 P.2d 982, 987 (Okl.1949). See also n. 32, supra.

**36.** See n. 9, supra.

cuted for a total of $44,293.00 under Loffland's employee benefit plan were mature, payable in the principal sum of $44,293.00, and therefore, liquidated. It is from this date that Loffland requested the trial court to compute and assess pre-judgment interest. Since Loffland's request for clarification of the trial court's judgment was sufficient so as to amount to a permissible amendment conforming to the proof presented during the hearing before the trial court; the trial court's denial of pre-judgment interest was incorrect as a matter of law, and is hereby reversed.

The judgment of the trial court is AFFIRMED, *except* the denial of pre-judgment interest, which we REVERSE, and this cause is REMANDED WITH INSTRUCTIONS to award Loffland such pre-judgment interest from June 1, 1981 to April 27, 1983.

HARGRAVE, V.C.J., and OPALA, ALMA WILSON and SUMMERS, JJ., concur.

LAVENDER and SIMMS, JJ., concur in part, dissent in part.

KAUGER, J., disqualified.