2001 OK CIV APP 127

**COMANCHE RESOURCES COMPANY,**
**Plaintiff/Appellant,**

v.

**John W. TURNER and Geraldine L.**
**Turner, Defendants/Appellees.**

**No. 94,533.**

Court of Civil Appeals of Oklahoma,
Division No. 2.

June 12, 2001.

Certiorari Denied Sept. 25, 2001.

David E. Pepper, Linn & Neville, P.C., Oklahoma City, OK, for Plaintiff/Appellant.

Cody Hodgden, Hodgden, Hallren, Smithton & Hodgden, PLLC, Woodward, OK, for Defendants/Appellees.

COLBERT, Judge:

¶ 1 Comanche Resources Company appeals the district court's order awarding damages to John and Geraldine Turner under the Surface Damages Act, *52 O.S.1991 §§ 318.2*—318.9. The primary issue on appeal is whether the trial court erred in finding that Comanche was not entitled to a set-off for an amount it previously paid to the Turners. Upon review of the record and applicable law, we conclude that the trial court did not err and affirm its order.

¶ 2 Comanche planned to re-enter an existing well—the Turner 3–1—on property in Dewey County to which the Turners owned the surface rights. Before entering, Comanche contacted the Turners and negotiated a settlement of surface damages. Because Comanche did not receive the executed release from the Turners in time, it filed a Petition for Appointment of Appraisers (case no. CJ–99–35) on April 23, 1999. Comanche received the executed release from the Turners on April 29, 1999, sent them a check for

$6,500, and dismissed CJ–99–35 with prejudice on April 30, 1999.

¶3 Upon commencing initial site preparation, Comanche determined it was not feasible to re-enter the Turner 3–1 and decided to move one hundred feet south and drill a new well, the Turner 3–2. This required additional site preparation and a longer access road, expanding the affected area. It also required additional approval from the Corporation Commission. Comanche informed the Turners of the change and requested that they initial the change in the release. The Turners refused and demanded additional compensation. Comanche then refused their demand and filed a second Petition for Appointment of Appraisers (case no. CJ–99–42).

¶4 Each party nominated one appraiser. The court then nominated a third and appointed all three. On December 15, 1999, the appraisers inspected the property and assessed the damages caused by the drilling operation. (Comanche had already drilled the second well, which was a dry hole.) Two appraisers assessed the damages at $8,000, and the third assessed the damages at $7,500.

¶5 Comanche filed an exception to the appraisers' reports, contending that it was entitled to a set-off of $6,500, the amount it had previously paid the Turners. The Turners responded, asserting that the appraisers had set the amount for surface damages for the new well, unrelated to the damages covered by the original plan at the original well site.

¶6 The trial court, following a hearing, agreed with the Turners, finding:

That the $6,500.00 previously tendered by Plaintiff to Defendants was exclusively for the damages which might be incurred on the Turner 3–1 well and did not represent payment or consideration for the damages which were incurred in drilling the Turner 3–2 well, a separate and distinct well from the Turner 3–1. Plaintiff did not engage in a continuous drilling activity on the Defendants' property.

The court then ordered Comanche to pay $8,000 to the Turners, explaining:

Because Plaintiff was not engaged in a continuous drilling activity on Defendants' property, Plaintiff is not entitled to a credit or offset against the judgment awarded herein for the sums previously paid to Defendants on the Turner 3–1 well. The $6,500.00 previously paid by Plaintiff to Defendants did not represent consideration or payment, in whole or part, for the damages caused by Plaintiff in drilling the Turner 3–2 well.

Comanche appeals, contending the trial court erred in finding that Comanche did not conduct continuous drilling operations and was not entitled to a set-off.

## DISCUSSION

¶7 Comanche contends the trial court erred in two ways: first, in determining that Comanche did not engage in continuous drilling operations because it drilled a new well; and second, in determining that Comanche was not entitled to a set-off or credit for the amount previously paid to the Turners.

¶8 The surface damage release stated that, in exchange for consideration, the Turners released Comanche from liability for specific surface damages to the northwest quarter of section 3–19N–20W in Dewey County, Oklahoma. It applied to damages:

arising from clearing and leveling the surface of the land and building thereon a well drillsite, access road and pit for the drilling, completing, equipping and operating an oil and gas well more particularly described as follows:

Turner # 3–1

Section 3–19N–20W

Dewey County, Oklahoma

Comanche asserts that this release should be applied to the damages caused by the Turner 3–2, that "its activities on the site constituted continuous drilling operations and that drilling a second borehole within one hundred (100) feet of the initial borehole, commenced within days of replugging the existing hole, did not constitute the drilling of a new well."

¶9 Not surprisingly, there are no Oklahoma cases dealing with this precise issue. Comanche relies upon *Steinkuehler v. Hawkins Oil & Gas, Inc.,* 1986 OK CIV APP 9,

728 P.2d 520, to support its position. Steinkuehler addressed the question of whether a leaseholder had "commenced" a well within the primary term of a commencement lease so as to extend the lease into its secondary term. The defendant oil company drilled the first hole within the primary lease term, but had to drill a second hole fifty feet away because of technical difficulties with the first hole. The second hole was actually started after the primary term ended. In determining when the well was "commenced," the court considered the question of "whether a second penetration of the surface, after the initial bore hole has been damaged beyond reclamation and the rig skidded, constitutes continuous drilling operations of a single well or commencement of a new well after 'completion' of the first well." *Id.* at 522. The court concluded that the drilling of a second hole did not constitute a new well. As a result, the exploration company had "commenced" the well within the primary lease term. *Id.* at 524–25.

¶ 10 We find Steinkuehler of limited application here. First, it applies to lease interpretation, not surface damages. Indeed, the court noted that the exploration company paid the surface owners "additional monies . . . as compensation for surface damages caused by expansion of the perimeter of the drilling site." *Id.* at 521. Second, the court in Steinkuehler reached its conclusion in part because the agreement between the parties did not specify a particular location for a particular well. *Id.* at 524. In this case, the parties' agreement did name a specific well.

¶ 11 We view the issue of whether Comanche engaged in continuous drilling operations as irrelevant. Our determination rests upon the language of the original settlement agreement. Comanche originally agreed to pay the Turners $6,500 for surface damages caused by re-entering the Turner 3–1. Comanche and the Turners executed a written contract identifying the specific well covered by the agreement. Based on the express language of the contract, the parties did not contemplate the possibility of Comanche

drilling a second well, because they limited the release to the work on the Turner 3–1.

¶ 12 When Comanche determined that re-entering the Turner 3–1 was not feasible and stopped working on that well, the agreement reached by the parties was fulfilled. Certainly, this meant that Comanche may have paid more money than the actual damages warranted. However, had Comanche decided to stop work at that point, it would not have been entitled to a refund.

¶ 13 Comanche seems to admit that it should pay the Turners some additional surface damages because it drilled the second well, expanded the area affected, and built a longer road. However, it argues that it should not have to pay the entire amount of damages set by the majority of the appraisers, $8,000, in addition to the $6,500 it already paid. In essence, Comanche argues that the $8,000 figure must include the $6,500 already paid.

■■■ ¶ 14 The trial court disagreed and found that the $8,000 figure did not include the $6,500. The scope of our review of factual issues is limited. "If there is any competent evidence upon which to uphold the trial court's decision in a matter tried to the court, we must affirm." *City of Tulsa ex rel. Tulsa Airport Auth. v. Air Tulsa, Inc.,* 1992 OK 146, ¶ 9, *851 P.2d 519,* 521; see also *Dismuke v. Cseh,* 1992 OK 50, ¶ 7, 830 P.2d 188, 189–90.[1] "Competent evidence is that which is relevant and material to the issue to be determined." *Joseph A. Coy Co. v. Younger,* 1943 OK 160, ¶ 5, 136 P.2d 890, 891–92.

¶ 15 Both appraisers who calculated the damages to the Turners' property at $8,000 signed affidavits stating that they calculated damages from the drilling of the second well only, did not consider the effects of the first well, and did not intend for Comanche to be able to reduce the $8,000 by the amount already paid for the first well. The identical affidavits read, in pertinent part, as follows:

3. The undersigned valued, assessed and determined that Mr. and Mrs. Turner's

---

1. Comanche erroneously asserts that this court can sit as a court of first instance and is free to substitute its analysis for that of the trial court. The case upon which Comanche relies, *Loffland*

*Brothers Co. v. Overstreet,* 1988 OK 60, 758 P.2d 813, applies only where the facts are presented to the trial court by stipulation. That situation is not present here.

real property was damaged by Comanche in the amount of $8,000.00, which represented the total damage caused by the oil and gas drilling operations on said property for the Turner No. 3–2 well.

4. It is my understanding that Comanche had previously paid Mr. and Mrs. Turner the sum of $6,500.00 for the damage which was caused or would be caused by Comanche in the re-entry and completion of the Turner No. 3–1 well.

5. In computing the amount owed by Comanche for damages on the Turner No. 3–2 well, I did not take into consideration any damages caused by Comanche as they relate to the Turner No. 3–1 well. In assessing damages caused by Comanche in the drilling of the Turner No. 3–2 well, I did not intend for Comanche to receive a credit for the $6,500.00 previously paid to Mr. and Mrs. Turner. The Turners are entitled to an additional $8,000.00 for the damages caused by Comanche.

6. As an appraiser, appointed by the Court, it is my opinion that the real property owned by Mr. and Mrs. Turner has been damaged by the oil and gas activities of Comanche in the drilling of the Turner No. 3–2 well in the amount of $8,000.00.

This evidence, embodied in sworn affidavits, constitutes competent evidence to support the trial court's finding that Comanche owed the Turners $8,000 in addition to the $6,500 already paid. The court, therefore, did not err in making that finding and also did not err in entering its order based on that finding.

¶ 16 AFFIRMED.

¶ 17 REIF, V.C.J., and GOODMAN, P.J., concur.