2010 OK CIV APP 110

**Ronald STOLL, Plaintiff/Appellant,**

v.

**CHONG LOR XIONG and Mee Yang, Defendants/Appellees.**

No. 107,880.

Court of Civil Appeals of Oklahoma, Division No. 1.

Sept. 17, 2010.

Eddie L. Carr, Christopher D. Wolek, Oliver L. Smith, Gibbs Armstrong Borochoff Mullican & Hart, P.C., Tulsa, OK, for Plaintiff/Appellant.

Mark D. Antinoro, Taylor, Burrage Law Firm, Claremore, OK, for Defendants/Appellees.

Opinion by WM. C. HETHERINGTON, JR., Judge.

¶ 1 Ronald Stoll appeals a judgment finding a clause in his contract with Chong Lor Xiong and Mee Yang (collectively, Buyers) unconscionable. He contends the contract was valid and enforceable. We affirm the trial court's findings the contract paragraph supporting Stoll's claim is unconscionable and Buyers were entitled to judgment in their favor as a matter of law.

## STANDARD OF REVIEW

¶ 2 When addressing a claim that summary adjudication was inappropriate, we must examine the pleadings, depositions, affidavits and other evidentiary materials submitted by the parties and affirm if there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law. *Perry v. Green,* 1970 OK 70, 468 P.2d 483. All inferences and conclusions to be drawn from the evidentiary materials must be viewed in a light most favorable to Plaintiff. *Ross By and Through Ross v. City of Shawnee,* 1984 OK 43, 683 P.2d 535.

¶ 3 On review of summary judgments, the appellate court may "substitute its analysis of the record for the trial court's analysis" because the facts are presented in documentary form. *Loffland Brothers Company v. Overstreet,* 1988 OK 60, ¶ 15, 758 P.2d 813, 817. "Although a trial court in making a decision on whether summary judgment is appropriate considers factual matters, the ultimate decision turns on purely legal determinations, *i.e.* whether one party is entitled to judgment as a matter of law because there are no material disputed factual questions." *Carmichael v. Beller,* 1996 OK 48, ¶ 2, 914 P.2d 1051, 1053. An order granting summary relief, in whole or in part, disposes solely of law questions and hence is reviewable by a *de novo* standard. *Brown v. Nicholson,* 1997 OK 32, ¶ 5, 935 P.2d 319, 321.

## FACTS

¶ 4 Xiong and Yang are husband and wife. Prior to coming to the United States, Xiong, who is from Laos, became a refugee due to the Vietnam War. He lived in a refugee camp in Thailand for three years. Xiong had three years of school in Laos and learned to read and write Laotian. After arriving in the United States, he attended an adult school for two years in St. Paul, Minnesota, where he learned to speak English and learned the alphabet. He testified he understands some spoken English but can only read a "couple" written words. Yang is a Hmong immigrant from Laos.[1] She received no education in Laos and her subsequent education consists of a six month "adult school" program after her arrival in 1985 in the United States at age 19.

¶ 5 According to Stoll, on November 8, 2004, Buyers signed a "preliminary" version of the contract which he did not execute, the contract terms at issue are the same as those in the executed January 1, 2005 contract, and they had time to have the disputed terms explained to them during the interim.

¶ 6 On January 1, 2005, Buyers contracted[2] to purchase from Stoll as Seller "a sixty

---

1. Her deposition testimony was taken using Yer Lee, a defendant in companion Case No. 107,-879, as an interpreter. However, at her own deposition, Ms. Lee was herself assisted by an interpreter.

2. The three-page Agreement to Sell Real Estate appears to be missing a page. Page one ends with numbered paragraph 7 and the text appears to be in mid-sentence. The first paragraph on the next page is numbered 10, and paragraph

(60) acre parcel of real estate located in Delaware County, Oklahoma approximately .5 miles East of the current Black Oak Farm, and adjacent to land recently purchased by Shong Lee and Yer Xiong Lee." The purchase price is described as "One Hundred Twenty Thousand Dollars ($130,000) [sic]. This purchase price represents $2,000 per acre and $10,000 for the cost of an access road to be constructed to the property by Seller." The agreement also describes the property as a parcel which is "adjacent to the farm recently purchased by Shong Lee and Yer Xiong Lee," *i.e.*, Xiong's sister and brother-in-law, who are the defendants in the companion case.

¶ 7 After the first growing cycle, Buyers de-caked [3] their chicken houses at a cost of $900. Yang testified:

> I don't know if he's supposed to get the chicken litter free or not. But in any country, no one will buy you a free lunch or provide you a—or give you a free cigarette pack of three dollars. We just asked him to help us [sic] half of what the de-cake cost is, and he said no.

She testified Stoll told her "that we had to understand that we had signed over the litter to him." She did not then understand "when or what paperwork that we had signed with him giving him the rights to the litters."

¶ 8 Xiong testified that in February of 2009 he had traded the chicken litter from the first complete clean out of their six houses for shavings. Stoll testified in a deposition taken in the companion case that the litter had value to him because "I was trading it for a litter truck and a tractor." He was unsure what damages he would sustain from not having the litter but had told people he would "have litter for sale, now it's not available." He also testified he had independent knowledge, due to having put shavings into ten houses eight weeks prior to his deposition on April 9, 2009, that a chicken house

the same size as Buyers' houses took one semi load of shavings at a cost of $1,600 per load. According to his petition, Stoll discovered Yang and Xiong were selling the chicken litter to others and the chicken litter shed was empty on or about March 24, 2009.[4] His suit against Buyers was filed the next day.

¶ 9 Stoll's petition claims Buyers breached their contract with him by attempting to sell their chicken litter to someone else and asks for specific performance and a temporary injunction to prevent any sales to third-parties. He also claims he is entitled to immediate possession and if the litter has been taken in execution of a judgment against him, is exempt from being so taken.

¶ 10 Buyers answered and stated affirmative defenses and counter claims, including that the sales contract has merged into their deed filed February 18, 2005 without incorporation of the provision on chicken litter such that the provision can not run with the land; impossibility of performance due to Stoll's violations of concentrate feeding operations statutory provisions; unconscionability of the contract; fraud due to Stoll's failure to provide cost information despite their limited language skills; trespass; and damages for harm to a shed caused by Stoll's heavy equipment. They request reformation of the contract or a finding the contract is invalid.

¶ 11 Buyers moved for summary judgment, arguing there is no dispute about material facts, the contract is unconscionable as a matter of law, and that as a consequence of this unconscionability, all of Stoll's claims should be denied and judgment be entered in their favor. Stoll moved for summary judgment in his favor, claiming there was no dispute Buyers signed the Agreement to Sell Real Estate on January 1, 2005, and under that agreement he was entitled to the chicken litter for 30 years. He alleged Buyers

---

numbering is consecutive through the third page, which contains the parties' signatures.

**3.** The de-caking process involves removal of some of the upper layer of bedding used by a flock. Afterwards, the bedding shavings are replenished for the next flock to a level set by Simmons' contract.

**4.** Factual descriptions are somewhat confusing in some of parts of Stoll's motion due to a reliance upon his deposition taken in *Stoll v. Lee*, companion Case No. 107,879. His access to chicken litter was denied in that case in late 2008.

had a prior version of their agreement[5] which contained the same paragraph in dispute but did not attempt to have it translated or explained to them and they should not benefit by failing to take such steps or from their failure to read the agreement.

¶ 12 The paragraph at the center of this dispute reads:

10. If this transaction closes as anticipated, Buyers shall be obligated to construct a poultry litter shed on the property with a concrete floor measuring at least 43 feet by 80 feet. Buyers shall place the litter from their poultry houses in the litter shed at the end of the growing cycle. Seller shall have all rights to the litter for a period of *30*[6] years for [sic] the date of closing. Seller shall empty the litter shed completely between growing cycles so that the shed will be available for use by Buyers when needed.

The opposing motions for summary judgment in this case and those filed in companion Case No. 107,879, brought by Stoll against Xiong's sister, Yer Lee, and her husband, Shong Lee, to enforce provisions of a contract containing the same 30–year chicken litter provision, were argued at a single hearing. At hearing on the motions for summary judgment,[7] Stoll argued the contract was not unconscionable and it was simply a matter of buyer's remorse. Buyers responded, arguing their illiteracy forced them to rely upon representations made to them and the interpreter available to them, Xiong's sister, explained the land purchase price but did not herself understand the meaning of the chicken litter paragraph.[8]

¶ 13 At hearing, the trial court commented: I've read this and reread this and reread this. And I have tried to think of an example that I think was more unconscionable than the situation than (sic) I find to

have been here as far as that clause. And to be real honest with you, I can't think of one. And if unconscionability has any meaning in the law at all, if that is a viable theory at all, then I think this is a prime example of it.

The trial court found the chicken litter clause was unconscionable, granted Buyers' motion for summary judgment, denied Stoll's motion for summary judgment, and entered judgment in favor of Buyers on Stoll's petition.

## ANALYSIS

¶ 14 Stoll argues the trial court erred in finding the chicken litter clause was unconscionable as a matter of law, "by considering the fairness of the contract," and by considering "anything other than fraud, duress, undue influence, mistake, or illegality of the contract." He claims the trial court should have recognized "the validity of the contract at issue" and granted him judgment as a matter of law.

¶ 15 In their motion for summary judgment, Buyers argued the contract was unconscionable and there is no "colorable argument that the contract was bargained for between informed parties." They argued Stoll's own inability to articulate a reason any party would agree to give their chicken litter away when they also had to bear all the costs of generating it. They claim this demonstrates how unreasonably favorable to one party the chicken litter provisions are and how those provisions are "the personification of the kind of inequality and oppression that courts have found is the hallmark of unconscionability."

¶ 16 In *Barnes v. Helfenbein,* 1976 OK 33, 548 P.2d 1014, the Court, analyzing the equitable concept of unconscionability in the context of a loan with the Uniform Consumer Credit Code, 14A O.S.1971 § 1–101, *et*

---

5. This prior agreement lists the purchase price as $120,000 and there is no provision for a road.

6. The number is hand-written in this agreement and typed in the paragraph in the companion case, but both contain the same text.

7. Similar motions were filed in companion Case No. 107,879, and hearing was held on the motions in both cases on November 4, 2009.

8. She is a defendant in the companion case, in which she testified she did not think he would take the chicken litter "for free." Her deposition testimony to that effect was included as an exhibit to Stoll's response to Buyers' motion for summary judgment.

*seq.,* found that "[a]n unconscionable contract is one which no person in his senses, not under delusion would make, on the one hand, and which no fair and honest man would accept on the other." 1976 OK 33, ¶ 23, 548 P.2d at 1020. The Court went on to note:

> The equitable concept of unconscionability is meaningful only within the context of otherwise defined factors of onerous inequality, deception and oppression. Unconscionability is directly related to fraud and deceit. An unconscionable contract is one which no person in his senses, not under delusion would make, on the one hand, and which no fair and honest man would accept on the other. The basic test of unconscionability of a contract is whether under the circumstances existing at the time of making of the contract, and in light of the general commercial background and commercial need of a particular case, clauses are so one-sided as to oppress or unfairly surprise one of the parties. Unconscionability has generally been recognized to include an absence of meaningful choice on the part of one of the parties, together with contractual terms which are unreasonably favorable to the other party.

1976 OK 33, at ¶ 23, 548 P.2d at 1020.

■ ¶ 17 "The question of unconscionability is one of law for the Court to decide." *Phillips Machinery Company v. LeBlond, Inc.,* 494 F.Supp. 318, 322 (N.D.Okla.1980), accord, 12A O.S.2001 § 2–302, Oklahoma Code Comment ("Note that the determination of 'unconscionable' is one of law for the court."). The Oklahoma Legislature, at 12A O.S.2001 § 2–302,[9] has addressed unconscionability in the context of the sale of goods under the Uniform Commercial Code. As is recognized in Restatement (Second) of Contracts, § 208, Comment a, (1981):

> Uniform Commercial Code § 2–302 is literally inapplicable to contracts not involving the sale of goods, but it has proven very

influential in non-sales cases. It has many times been used either by analogy or because it was felt to embody a generally accepted social attitude of fairness going beyond its statutory application to sales of goods.

We agree such an analogy is helpful with this analysis. The parties here provided evidence relating to their transaction.

¶ 18 According to Stoll's deposition testimony in the companion case, which testimony is provided to support his motion for summary judgment in this case, it was his idea to include the chicken litter paragraph in the land purchase contract. He testified that one house de-caking of a house like those of Buyers yields about 20 tons of litter. After 2008, rising oil prices drove up the cost of commercial fertilizer, but before then he had not sold litter for more than $12 per ton. Yang testified at deposition that according to Stoll's representations, the litter could be worth $25 per ton. Xiong testified at deposition that they raised five flocks per year in their six houses. Applying these figures, the annual value of the litter from de-caking alone (*i.e.,* which does not include *additional* volumes of litter from a complete clean out) appears to range from roughly $7,200 to $15,000. For thirty years, the estimated value of the de-caked chicken litter using Stoll's $12 value would be $216,000, or roughly an additional $3,325.12 more per acre just from de-caked chicken litter sales than the $2,000 per acre purchase price stated on the first page of the contract. Effectively, Stoll either made himself a partner in their business for no consideration or he would receive almost double to way over double the purchase price for his land over thirty years. Under Stoll's interpretation of paragraph 10, Buyers' separate business would generate an asset for thirty years for which they receive no consideration and would serve as additional pay-

9. Section 2–302 provides:

> (1) If the court as a matter of law finds the contract or any clause of the contract to have been unconscionable at the time it was made the court may refuse to enforce the contract, or it may enforce the remainder of the contract without the unconscionable clause, or it may

> so limit the application of any unconscionable clause as to avoid any unconscionable result. (2) When it is claimed or appears to the court that the contract or any clause thereof may be unconscionable the parties shall be afforded a reasonable opportunity to present evidence as to its commercial setting, purpose and effect to aid the court in making the determination.

ment to him over and above the stated price for the land.

¶ 19 An analogy exists regarding the cancellation of deeds. "Ordinarily the mere inadequacy of consideration is not sufficient ground, in itself, to justify a court in canceling a deed, yet where the inadequacy of the consideration was so gross as to shock the conscience, and the grantor was feeble-minded and unable to understand the nature of his contract, a strong presumption of fraud arises, and unless it is successfully rebutted, a court of equity will set aside the deed so obtained." *Fickel v. Webb,* 1930 OK 432, 293 P. 206; *Morton v. Roberts,* 1923 OK 126, 213 P. 297. Under such circumstances, there is no assent to terms. Here, a nearly reverse situation exists in that the consideration actually to be paid under the contract far exceeds that stated. Under Stoll's interpretation of paragraph 10 (which was his "idea"), the land sale contract is onerous to one side of the contracting parties while solely benefitting the other, and the parties to be surcharged with the extra expense were, due to language and education, unable to understand the nature of the contract. Stoll testified he believed his land was worth $2,000 per acre rather than the $1,200 per acre price of nearby land in 2004 due to the work he had done to clear and level it. The actual price Buyers will pay under the paragraph Stoll included in the land sale contract is so gross as to shock the conscience. Like in *Fickel,* the actual price is so gross as to shock the conscience.

¶ 20 Buyers argue no fair and honest person would propose and no rational person would enter into a contract containing a clause imposing a premium for land and which, without any consideration to them, imposes additional costs in the hundreds of thousands over a thirty-year period that both are unrelated to the land itself and exceed the value of the land. We agree. The trial court found the chicken litter clause in the land purchase contract unconscionable as a matter of law and entered judgment in Buyers' favor. That judgment is AFFIRMED.

BUETTNER, P.J., and HANSEN, J., concur.