**OKLAHOMA TURNPIKE AUTHORITY,**
Plaintiff in Error,

v.

**W. V. DEAL and Emma Deal,**
Defendants in Error.

No. 40622.

Supreme Court of Oklahoma.

March 30, 1965.

Rehearing Denied April 27, 1965.

McKeever, Glasser, McKeever & Conrad, Enid, Pierce, Mock, Duncan, Couch & Hendrickson, Melvin F. Pierce, Oklahoma City, for plaintiff in error.

Hardin Ballard, James H. Ballard, Purcell, for defendants in error.

IRWIN, Justice.

Oklahoma Turnpike Authority commenced condemnation proceedings against W. V. Deal and Emma Deal, referred to as defendants, to condemn and acquire for turnpike purposes the surface rights to 6.32 acres of land in McClain County. The Commissioners, in their report, listed the damages at $3,028.00, and both parties filed a demand for a jury trial. Thereafter, defendants withdrew their demand. The cause was tried and the measure of damages was submitted to the jury and it returned a verdict for $6,000.00 and judgment was rendered thereon. The Authority perfected an appeal from the order overruling its motion for a new trial.

The issues involved in this appeal are: (1) The admissibility of evidence concerning the amount of money the Authority paid in purchasing a right-of-way from another party; and, (2) whether the admission of such evidence constitutes reversible error in the instant action.

## FACTS

The 6.32 acre tract involved is located in the southeast corner of defendants' 189.5 acre farm. Defendant Deal testified that the value of the farm before the taking was $47,000.00 and after the taking was $40,000.00, or, in his opinion, the measure of damages was $7,000.00. Included in the $47,000.00 estimate were the improvements and defendant Deal placed a value of approximately $14,000.00 on the improvements. No improvements were located on the tract condemned. In other words, defendant Deal testified that his 189.5 acre farm, exclusive of the improvements, was worth approximately $33,000.00 before the taking, and after the Authority took the 6.32 acre tract, which had no improvements, the remaining portion was worth approximately $26,000.00. The 6.32 acre tract is a part of a 23 acre tract that had been used for feed land before the same was placed in the soil bank with the U. S. Government.

On cross examination defendant Deal was asked if he could break down the value that was placed on each part of his land. He replied, "No, not without figuring I couldn't tell you", and he couldn't place a value on it because there is no more selling up there and " * * * you can't buy it, so I don't know how to break the value down". How defendant Deal ascertained the value of his farm before the taking and the value after the taking and whether he had had any experience in appraising land were not shown.

The Authority took only the surface rights (no minerals) to the 6.32 acre tract and on cross examination defendant Deal testified he had a sixty acre mineral interest in and under the 189.5 acre farm; that his mineral interest was included in arriving at his estimated value; that he didn't know what portion of his estimate was attributable to the mineral interest although the minerals had value; and that he didn't know the value of the minerals and didn't know of any being sold.

A Mr. Hunt testified for defendants as an expert witness, and in his opinion the value of the farm with the improvements before the taking was $45,000.00, and after the taking the farm was worth $40,000.00, or $5,000.00 difference. In his opinion the value of the land taken was $3,000.00 and the damage to the remainder by reason of the taking was $2,000.00. A Mr. Bishop, testifying as an expert witness for defendants, stated the value of the land with the improvements before the taking was $55,000.00, and after the taking, $50,000.00, or $5,000.00 difference.

Three witnesses for the Authority testified as experts concerning the value of the farm before and after the taking. One testified the measure of damages was $1,597.54; another stated $1,412.00; and the other witness said $1,350.00.

The 6.32 acre tract of land involved in this action is located in the Southeast corner of the Southwest quarter of the Northeast quarter of Section 9. A Mr. Remington, who testified as an expert witness for the Authority placed the damages at $1,597.54, on direct examination stated

that the Northwest quarter of Section 10, (referred to as the Griffith tract) with one-half of the minerals, sold for $45,000.00 about two years prior to trial of this cause. He stated however, that you couldn't compare the two tracts of land because the Griffith tract was "more level" and "much more productive" than defendants' farm.

On cross examination the witness stated that he never mentioned that the two tracts could be compared but he used the Griffith purchase price as a guide in arriving at the value of defendants' farm. Counsel for defendants also tried to show on cross examination that the sale was not voluntary but a forced sale, but the witness denied this. The witness was also asked: " * * if it isn't a fact that the turnpike has just paid the owner of that land $70,000.00 for taking 22 acres out of the 160." The witness answered "No sir". The Authority objected to any further questions regarding the settlement between the Authority and Mr. Griffith. The objection was overruled and the trial court stated it was admitted only for the purpose of affecting the credibility and the testimony of the witness. The witness was asked if the answer was "no" because another tract of land was included in the settlement. The witness said that was one of the reasons and the settlement figure was nearer to $50,000.00 than $70,000.00. In the further cross examination of the witness Remington, he was asked, "Now, Mr. Remington, my question is, that although you value the total 160, the land, at $47,-000.00, my question is, did not the Oklahoma Turnpike Authority pay Mr. Griffith $70,000.00, or substantially that amount for the taking of 22.76 acres of it?" The witness answered "No sir", and the trial court overruled the Authority's request that the question be stricken and the jury properly admonished.

After further questioning, the witness admitted that another right of way had been included in the settlement with Mr. Griffith. Defendants' counsel then produced the pleadings filed by the Authority against Griffith, which included 10.87 more acres, and asked the witness if this was not correct. The trial court overruled the objection but admonished the jury that the evidence was not offered for any purpose but for cross examination of the "witness to test his recollection of values and his basis for determining the values in this case and is not offered as any evidence of the value in the case that you are now trying."

The witness was later asked if the Turnpike Authority did not pay Mr. Griffith a substantial portion of $70,000.00 for 33.63 acres. This was objected to by the Authority. The objection was overruled and the witness answered that he did not know.

## CONTENTIONS

The Authority contends that it was reversible error for the trial court to permit the defendant-condemnee, over the objection of the plaintiff-condemnor to prove payments made by the plaintiff-condemnor in the acquisition of other tracts of land.

Defendants contend that where the Authority in an eminent domain case qualifies their witness as an expert in land values by his testimony concerning the sale of a particular tract as a "comparable sale", it is thereafter permissible to cross-examine that witness concerning that sale so that the jury may determine whether it was a free or forced sale, and whether it was a comparable sale, and the weight and credibility of that expert opinion witness.

## CONCLUSIONS

Defendants propose that the evidence concerning what the Authority paid Griffith for settling a condemnation proceeding against him was competent evidence and cites Wilkerson v. Grand River Dam Authority, 195 Okl. 678, 161 P.2d 745. In that case we said:

"John Bogle, a witness for the defendant, had testified that defendant's lands were worth from sixty to seventy dollars per acre and on cross-examination was asked whether or not he had sold certain lands to the plaintiff for

which he had received less money. The defendant says this was error for the reason that it constituted evidence of value by comparison and in violation of the rule as announced in 22 C.J. 760, 32 C.J.S. Evidence, § 593; Dean v. Hawes, 29 Cal.App. 689, 157 P. 558; In re Graves, D.C., 182 F. 443; Ft. Worth & D. C. Ry. Co. v. Hapgood, Tex.Civ.App., 201 S.W. 1040. We are unable to agree with the contention so made. The purpose of the cross-examination was to test the credibility of the witness and not to prove value. This was permissible. See 70 C.J. 649; * * *."

The evidence complained of by defendant in his brief in the above case discloses that neither the amount of land sold nor the sum received were mentioned and the above language was mentioned only one time. It seems that both parties treated the evidence as being no different than had witness Bogle voluntarily sold his land to an individual instead of to the Grand River Dam Authority. In the trial court and on appeal, the defendant did not urge that such evidence was incompetent because it constituted evidence concerning what the Grand River Dam Authority had paid for land in a condemnation proceeding, but the sole issue raised on appeal was that such evidence "without showing that the quality of the soil, improvements and the like on the land referred to by counsel for plaintiff (Grand River Dam Authority) was similar to that involved in this action, this examination was manifestly erroneous". In other words, neither the parties, the trial court, nor the court on appeal, treated the evidence complained of as being sufficient to constitute evidence concerning what the Grand River Dam Authority had paid for lands in condemnation proceedings.

■ In Durell v. Public Service Company of Oklahoma, 174 Okl. 549, 51 P.2d 517, we held:

"On trial of action to determine damage to land taken by eminent domain, evidence of condemnation prices paid for other tracts of land is incompetent."

In the opinion we said:

"The following is from Lewis on Eminent Domain (3d Ed.) § 667:

"'What the party condemning has paid for other property is incompetent. Such sales are not a fair criterion of value, for the reason that they are in the nature of a compromise. They are affected by an element which does not enter into similar transactions made in the ordinary course of business. The one party may force a sale at such a price as may be fixed by the tribunal appointed by law. In most cases the same party must have the particular property, even if it costs more than its true value. The fear of one party or the other to take the risk of legal proceedings ordinarily results in the one party paying more or the other taking less than is considered to be the fair market value of the property. For these reasons such sales would not seem to be competent evidence of value in any case, whether in a proceeding by the same condemning party or otherwise.'"

In 18 Am.Jur., Eminent Domain, Sec. 352, page 996, it is stated that, "The price paid for neighboring land when taken by eminent domain, either as a result of an award, a verdict, or a settlement, is inadmissible, as it is not a sale in open market and does not show market value".

■ When the Authority offered evidence on direct examination that the Griffith property had been purchased two years prior to trial for $47,000.00, whether the purchase was a result of a forced sale or a free sale and whether the land was comparable to defendants' land and evidence concerning the credibility of the witness Remington, were proper areas of cross examination. However, the questions asked and the evidence adduced, over the objections of the Authority, specifically concerned the amount the Authority had paid Griffith in settlement of a condemna-

tion action against Griffith. The sum and substance of the questions and answers were to the effect that Mr. Griffith received between $50,000.00 to $70,000.00 (in the words of defendants' counsel, it was a substantial portion of $70,000.00) for settling his claim against the Authority for approximately 33 acres of land. Although the trial court admonished the jury that such questions and answers were not offered as evidence as to the value of defendants' land, such admonishment did not neutralize or take from the jury the evidence that Griffith had received between $50,000.00 to $70,000.00 for 33 acres of land in settling his claim with the Authority.

We can only conclude that the evidence adduced on cross examination of witness Remington, concerning the amount of money Mr. Griffith had received from the Authority for settling his claim against the Authority, was incompetent and inadmissible.

In Hostutler v. State of Oklahoma on Relation of the Commissioners of the Land Office, Okl., 302 P.2d 983, we held that before a judgment will be reversed on account of the admission of incompetent evidence, it must affirmatively appear that the evidence probably resulted prejudicially to the interests of the one making the objection thereto. In State ex rel. Dept. of Highways v. Allison, Okl., 372 P.2d 850, we held that where, over proper objection, incompetent evidence is introduced which is prejudicial to the complaining party, the admission of such evidence constitutes reversible error.

In the instant action, the Authority objected to the admission of the incompetent evidence and protected its record. If we were not to consider such incompetent evidence, we find the only evidence that would support the $6,000.00 verdict and judgment was that of defendant Deal. He testified that the measure of damages should be $7,000.00. As heretofore pointed out, defendant Deal testified that the value of the 189.5 acre farm, exclusive of improvements, was $33,000.00 before the tak-

ing and $26,000.00 after the taking, and no improvements were taken. Although he owned approximately one-third of the mineral rights and no mineral rights were condemned, he said he didn't know what portion of his estimate was attributable to his mineral interest because he didn't know what the minerals were worth but he did consider they had some value.

On the other hand, defendants' two expert witnesses were of the opinion that the measure of damages was $5,000.00. One of his expert witnesses was of the opinion that $2,000.00 of the $5,000.00 was the damages to the remainder of the land by reason of the taking of the 6.32 acre surface rights. The highest measure of damages fixed by the expert witnesses of the Authority was $1,597.54.

In considering the verdict of the jury and judgment of $6,000.00, in connection with all of the competent and incompetent evidence, we can only conclude that the admission of the incompetent evidence was prejudicial to the rights of the Authority.

Having determined that the evidence concerning the amount Mr. Griffith received from the Authority in settlement of the condemnation proceeding against him was incompetent and inadmissible, and that the admission of such evidence prejudiced the rights of the Authority, the admission of such evidence constitutes reversible error.

Judgment reversed with directions to grant the Authority a new trial.

HALLEY, C. J., JACKSON, V. C. J., and DAVISON and BERRY, JJ., concur.

WILLIAMS and BLACKBIRD, JJ., dissent.

WILLIAMS, Justice (dissenting).

In the instant case the damages sustained by defendants, according to the testimony, varied from $1350.00 to $7000.00. The verdict of the jury determined the amount

thereof to be $6000.00. This was within the limits fixed by the testimony.

The verdict and judgment based thereon have been vacated for the reason that counsel for defendants asked Authority's expert witness Remington certain questions eliciting an answer as to the amount Authority had recently paid for the "Griffith tract". Mr. Remington on direct examination had testified as to the amount Griffith had paid two years previously for 160 acres. On cross-examination Remington stated that Griffith purchased his land for $45,000.00, but that now it was worth $57,000.00.

The testimony of defendant Deal in effect has been found to have no probative value. I know of no authority to show that defendant Deal was wholly disqualified as a witness. It has been the practice in Oklahoma, fairly uniformly followed, to permit the owners of lands sought to be taken in eminent domain proceedings to testify as to their damages. The jury had an opportunity to observe this witness and his demeanor. It was in a better position to determine the credibility of the witness and the weight to be accorded to his testimony. A review of the testimony convinces me that the jury believed Mr. Deal to the extent at least of $1000.00, inasmuch as the verdict exceeded the amounts set by defendants' other witnesses by that amount. The evidence of defendant Deal was sufficient to support the jury's verdict and by $1000.00 to spare.

No complaint that there was error in the instructions was made.

From a study of the cross-examination of Remington concerning the amount Authority paid Griffith, I find little, if any, reason to support Authority's claim that such was improper and may have been prejudicial to Authority.

Defendants' counsel had sought to show by cross-examination of the named expert witness that the man from whom Griffith had purchased had had to sell to Griffith to settle his father's estate which had been left to his step-mother and himself

and was not truly a sale by one willing but not obligated to sell to one who was willing but not obligated to buy. The witness was unable to give information on the point and it was not pursued further.

Defendants' counsel then cross-examined the witness fairly vigorously as to whether the Authority had not paid $50,000.00 to $70,000.00 for some 22.76 acres of the Griffith tract and some 10 or 11 other acres of another tract and the witness said in effect he didn't know, that he was in charge of appraisals, not purchases, but that it was nearer the smaller figure.

Defendants rely upon the case of Wilkerson v. Grand River Dam Authority, 195 Okl. 678, 161 P.2d 745. The trial court was apparently cognizant of that Authority as is demonstrated by its repeated admonition to the jury that such questions and any information to be elicited thereby should be considered only by the jury to test witness Remington's credibility. I have noted hereinabove that witness Remington said the farm was now worth only $57,000.00, presumably after deduction of the 22.76 acres. The witness did not give the exact amount, said the land was far better land than that involved in the trial from which this appeal arose, said he did not know the exact amount, nor how much was to go for each of the two Griffith parcels, etc. In my opinion this did not amount to a disclosure to the jury of the amount of some other person's settlement.

If the jury was influenced by anything other than the owner's and expert testimony as to damage it probably was nothing more nor less than a suggestion by defendants' counsel who, during argument, twice suggested that a verdict in the exact amount of the one returned would in his opinion be a fair one. No objection was made to such suggestion.

I am of the opinion that the cross-examination of Remington concerning substantial ($50,000.00–$70,000.00) payment by

Authority to Griffith did not tend to arouse any undue passion or prejudice in the minds of the jury and that therefore the judgment is not excessive.

I respectfully dissent.