Applicant: Arkla Exploration Company in the Matter of Pooling Interests and Adjudicating the Rights and Equities of Oil and Gas Owners in the Granite Wash Common Source of·Supply underlying all of Section 19, Township 9 North, Range 23 West, Beckham County, Oklahoma.

Fred L. COOGAN, Jr., and Grady Wallace, Appellants,

v.

ARKLA EXPLORATION COMPANY, and Corporation Commission of the State of Oklahoma, Appellees.

No. 50623.

Supreme Court of Oklahoma.

Jan. 9, 1979.

Ivester, Ivester & Ivester, Sayre, for appellants.

Crabtree, Miller & Musser, Oklahoma City, for appellees.

HARGRAVE, Justice:

In this appeal from Corporation Commission Order No. 127203, the appellants, Fred L. Coogan, Jr., and Grady Wallace, argue the Corporation Commission committed reversible error in setting a lease bonus of $35. per acre and a ⅛ royalty in lieu of participation in a forced pooling order because that figure was testified to be the prior price paid for leases in the area. The appellants state the only proper evidence of value is fair market value and then contend the only admissible evidence before the Commission relating to fair market value conclusively establishes the reasonable value to be $100. per acre with a ³/₁₆ royalty.

Arkla Exploration Company instituted these proceedings by filing an application to pool and adjudicate the rights of oil and gas

owners under 52 O.S.1971 § 87.1 (since amended) in and to the Granite wash common source of supply underlying all of Section 19, Township 9 North, Range 23 West, in Beckham County, Oklahoma. After notice was made by mail and publication in Oklahoma and Beckham counties, the application was set for hearing on the 9th day of November, 1976 before a trial examiner. The trial examiner's report was filed on the 13th of December and inasmuch as no exceptions were filed to the trial examiner's report, the Commission adopted those findings and recommendations and made Order No. 127203.

The order permits the applicant, Arkla, to drill and operate a well in Section 19 to the Granite wash common source of supply. The estimated cost of such a well was set at $260,882.00 for completion of a dry hole and $475,658.00 for a single zone producer. The order fixes a $35.00 per acre cash bonus and ⅛ royalty for owners electing not to participate in the well and pay their proportionate share of the costs of the well to be paid within 30 days of the order. The order also allows applicant only 120 days to commence well drilling.

At the hearing before the trial examiner, testimony disclosed that Section 19 was a 640 acre drilling spacing unit for the production of gas and gas condensate, and that the original application for that unit included not only the Granite wash common source, but also the Brown Dolomite common source. The inclusion of that last mentioned source was dismissed from the application at the request of Oklahoma Natural Gas because that corporation is operating the Panhandle dolomite located in the East ½ of Section 19 as a natural gas storage unit.

Arkla owns leases on 325½ acres in Section 19, and their landman testified as the first witness that the highest figure paid for leases in the Section was $35.00 per acre and a ⅛ royalty where all horizons were leased on a five year primary term. This witness stated that this past lease price was a fair market value.

Appellants' first witness also testified relative to fair market value of leases in the area and his testimony, just as the applicant's testimony, refers to what other leases in the area have brought in the past. He stated leases have been made in Section 5 (3 miles away from the location of Section 19) for a $100. per acre bonus and 3/16 royalty. Ten year primary term leases in the general area have sold for $35.00 to $65.00. This witness also noted he knew of no leases in the nine sections adjoining Section 19 that brought more than a $35.00 per acre bonus in the year preceding the hearing.

A third witness testified some leases 3½ miles from Section 19 have brought the $100.00 per acre bonus with a 3/16 override the appellant desired for his Section 19 lease. This witness also stated he knew of no leases in the 9 sections immediately adjoining Section 19 which brought the higher bonus and royalty.

The fourth and last witness testified he refused a $100.00 bonus with 3/16 royalty terms offered for a lease 4 miles from Section 19, and has accepted $35.00 to $65.00 and an ⅛ royalty for other leases in the adjoining township.

■ The foregoing review of the testimony given at the hearing before the trial examiner reveals the only testimony given the examiner to establish fair market value of leases in Section 19 is value determined by looking at comparable sales, both in that Section and removed from it. The first witness equated past lease terms and market value in his testimony without objection. A second point bearing on the value of the bonus and royalty in lieu of participation in Section 19 awarded by the Commission's order is that all testimony given at the hearing relates to leases with primary terms far longer (five and ten years) than the 120 days allowed by the order to commence operations. Other factors differentiating the Commission's order and the testimony is the fact that the order is only operative upon one producing horizon underlying a gas storage area and the testimony supporting higher royalties and bonuses are a significant distance away from Sec-

tion 19. Bearing these factors in mind, the Court is persuaded that there is substantial evidence to support the order.

 The appellants' sole basis for arguing error in this appeal is that the terms and price paid for leases in the area are not admissible to establish reasonable market value. Were this true, there would be no admissible evidence in the record before us as that is the basis upon which all the recorded testimony rests. Be that as it may, we are not persuaded by the condemnation cases cited as authority for establishing the inadmissibility of price paid for their leases as evidence of market value. We have heretofore allowed prior negotiated terms to stand as substantial evidence of value. In *Texas Oil and Gas Corporation v. Rein,* Okl., 534 P.2d 1280 (1975) at p. 1281, this Court affirmed an order's bonus and royalty provisions after stating the substantial evidence rule and noting:

> " * * * during the six months preceding the hearing it [applicant] had acquired leases on the other 480 acres in the spacing unit on the same terms offered to Rein."

The appellants' position in this respect is that a forced pooling order is in effect a condemnation of a mineral lease, and as such, the incompetency of condemnation price as evidence of value should also be applied to evidence of value of the nonparticipating owner's interest in this pooling order. The case under consideration here is easily distinguishable from the instance where condemnation price is inadmissible. In *Oklahoma Turnpike Authority v. Deal,* Okl., 401 P.2d 508 (1965), this Court stated that where a trial is had in a condemnation proceeding to determine the measure of damages, evidence of the price paid for other tracts in condemnation proceedings is incompetent. In explanation of that statement, the Court said:

> "The price paid for neighboring land when taken by eminent domain, either as a result of an award, a verdict, or a settlement, is inadmissible, as it is not a sale in open market and does not show market value." [Citing from 18 Am.Jur., Eminent Domain, Sec. 352, page 996]

The distinguishing factors apparent from an examination of this record are that sales of leases to the applicant herein were open market transactions—not the result of a legal proceeding and as such are admissible. The applicant's witness testified that these leases were purchased prior to the institution of this proceeding before the Corporation Commission. Had factors been present which tended to show the transaction was not an open market sale and purchase of mineral leases, the respondent should have seen that evidence was included in the record. The record in its present state does not demonstrate that the evidence of recent past transactions were not probative evidence of fair market value, and the majority rule, adhered to in this State is that the value of land or interest in realty at a particular time may as a general rule be proved by evidence of voluntary sales of similar property in the vicinity made at or about the same time. 32 C.J.S. Evidence § 593(3). In *Oklahoma Turnpike Authority v. Foster,* Okl., 398 P.2d 503 (1965), this Court held that a witness' opinion on the value of land based largely if not exclusively upon prices for which land had previously sold in the same quarter section was competent evidence to support a damage award.

The order of the Corporation Commission is supported by substantial evidence and that order is affirmed.

AFFIRMED.

All Justices concur.