2007 OK CIV APP 55

**CHESAPEAKE OPERATING, INC., Plaintiff/Appellant,**

v.

**Darwin D. LOOMIS, Defendant/Appellee.**

No. 103,584.

Court of Civil Appeals of Oklahoma, Division No. 4.

March 5, 2007.

Certiorari Denied May 21, 2007.

the child" under the residual hearsay exception of 12 O.S. 2803 (24).

Michelle P. Cullen, Oklahoma City, OK, for Plaintiff/Appellant.

Bryce Hodgden, Kathleen Lies Hallren, Hodgden, Hallren, Smithton & Hodgden, PLLC, Woodward, OK, for Defendant/Appellee.

DOUG GABBARD II, Presiding Judge.

¶ 1 Plaintiff, Chesapeake Operating, Inc. (Chesapeake), appeals the trial court's order denying its objections to an appraisers' report in an action initiated by Chesapeake under Oklahoma's Surface Damages Act, 52 O.S. Supp.2006 § 318.5. After thoroughly reviewing the record and the law, we affirm.

## FACTS

¶ 2 Defendant, Darwin D. Loomis (Loomis), is the surface owner of a 240–acre tract in

Woodward County, Oklahoma. In 2005, Chesapeake drilled and began operating an oil and gas well on Loomis' property. Chesapeake and Loomis began negotiations regarding surface damages. When negotiations fell through, Chesapeake filed a petition to appoint appraisers to assess the damages under § 318.5 of the Act.

¶ 3 Chesapeake nominated Tony Kohl as an appraiser. Loomis nominated Gary Gerloff as an appraiser. Kohl and Gerloff nominated David Story as an appraiser. The trial court entered an order appointing Kohl, Gerloff, and Story, instructed them that the measure of damages was "the fair market value of the property that was taken plus any injury to any part of the property not taken," and defined "[i]njury to the remaining property" as "damage, if any, caused by" the following:

1. The separation of the part taken from the remaining property;

2. The loss or impairment of a right of access to the road that previously abutted the owner's property; and

3. The construction and/or use of the drilling operations on the property being taken.

¶ 4 Gerloff and Story returned a report finding that approximately 1.83 acres of land had been used for the wellsite, and that Loomis had suffered "surface damages" of $12,350 as a result of the drilling operation generally. Kohl filed a separate report assessing total damage at $5,490, based solely upon the fair market value of the 1.83 acres, which he determined to be $3,000 per acre. Kohl's report specifically found that no damage had occurred to any property beyond the 1.83 acres.

¶ 5 Chesapeake filed exceptions to the majority's report, asserting, among other things, that the Surface Damages Act did not authorize the filing of more than one appraisal report, that the majority had used an improper methodology in determining surface damages, and that it had allocated damages for items not allowed by the Act. Loom-

is disagreed, and the matter was heard in June 2006.

¶ 6 At the hearing, Appraiser Story explained that the majority arrived at its damage determination by including the following:

(1) $6,405 for 1.83 acres taken to construct the wellsite pad and lease road at a fair market value of $3,500 per acre, based upon 15 comparable properties;

(2) $1,750 for damage to property near the well site caused by Chesapeake's use of the off-site land for parking;

(3) $1,000 for damages caused by a water spill that created erosion problems to property which was off-site; and

(4) Approximately $3,200 for the "stigma" associated with having an oil and gas operation located on the 240-acre tract as a whole. Among other factors, Story testified, the latter figure was affected by the fact that a surface owner has no say in the location of the well site.[1]

¶ 7 Chesapeake presented evidence from its company representative, Ron Everett, that there was no significant damage to off-site property. Kohl testified that he also observed no physical damage to offsite property and his appraisal was based solely upon the fair market value of the 1.83 acres actually used for drilling operations.

¶ 8 The trial court accepted the majority's appraisal, and denied Chesapeake's exceptions. Chesapeake appeals.

### STANDARD OF REVIEW

■■■ ¶ 9 Whether appraisers may file more than one report, and what is the proper measure and method of determining damages under the Surface Damages Act, present questions of law subject to de novo review. See Ward Petroleum Corp. v. Stewart, 2003 OK 11, ¶ 4, 64 P.3d 1113, 1115. However, the appraisers' determination of the actual amount of damages presents a factual question reviewable under the any-competent-evidence standard. Stephens Prod. Co. v. Taylor, 1997 OK CIV APP 70, 949 P.2d 301.

---

1. Story explained that acreage with frontage along a road will typically sell for more than acreage located in the middle of a larger tract;

and because the surface owner is unable to designate the well location, the overall value of the property is lessened.

## ANALYSIS

### 1. Effect of Multiple Appraisal Reports

¶ 10 In its first proposition, Chesapeake contends the trial court erred in permitting more than one appraisal report, and in approving a report not agreed to by all three appraisers. It argues that the Act contemplates a single report signed and agreed to by all three appraisers after they have "met and compromised on the final value."

¶ 11 The Oklahoma Supreme Court has not addressed this precise issue. However, there have been a number of Oklahoma appellate cases in which more than one appraisal report was filed. *See, e.g., Ward Petroleum,* 2003 OK 11, 64 P.3d 1113; *Comanche Resources Co. v. Turner,* 2001 OK CIV APP 127, 33 P.3d 688.[2] In *Ward Petroleum* and *Comanche,* the filing of two appraisal reports was neither raised as error by the parties, nor commented upon by the appellate courts. Since the issue was not raised *sua sponte,* we conclude that neither court found the filing of multiple appraisal reports "fundamental error" requiring reversal. We agree.

¶ 12 Nevertheless, Chesapeake correctly notes that the Act refers to the filing of "a report" or "the report," and it argues that this is suggestive of a legislative intent to *mandate* only *one* report. However, its argument ignores the role of the court in surface damage proceedings. Under § 318.5(F), exceptions to damage appraisals must be set for hearing, after which the court is directed to "enter the appropriate order either by confirmation, rejection, modification, or order of a new appraisal for good cause shown." Obviously, nothing in the statutory language specifically requires the trial court to order a new appraisal. The legislature clearly understood that appraisers may differ in their opinions, and that such differences would be resolved either by the trial court upon the filing of an exception to the appraisers' findings, or by a jury upon the filing of a demand for jury trial. When a dissenting appraisal report is filed, it may often be of great use by the trial court in assessing the appropriateness of the majority's report. Ultimately, we are unable to find that either party suffered harm from the filing of multiple reports.

¶ 13 Here, the trial court could have ordered another appraisal, but it was not required to do so. A contrary rule would result in the inefficient use of judicial resources and frustrate the primary goal of the Act, which is "to promote the prompt payment of compensation to a surface owner whose land is taken for oil and gas exploration." *Ward Petroleum,* 2003 OK 11, ¶ 5, 64 P.3d 1113, 1115.

¶ 14 For these reasons, we reject Chesapeake's argument that the trial court's confirmation of a report signed by two, rather than all three, appraisers was error.

### 2. Type of Injury Considered

¶ 15 Chesapeake also asserts the trial court erred in confirming the majority report because the appraisers allowed for the diminution in value of Loomis' "remaining property" caused by the stigma of having an oil and gas well operation on his property. Chesapeake focuses this argument on Appraiser Story's comment that his appraisal considered the surface owner's lack of input in designating the well site.

¶ 16 In considering this factor, Story was clearly referring to the detrimental effect that perceived limitations on potential use, caused by a nearby oil or gas well, may sometimes have on the fair market value of real property. We find that his application of this factor in determining damages was proper.

¶ 17 When instructing appraisers, trial courts are required to use language from the Oklahoma Constitution, Art. 2, § 24, defining "just compensation," and from Okla-

---

2. In addition, at least two unpublished opinions from the Court of Civil Appeals have also mentioned the filing of more than one report: *Le Norman Energy Corp. v. Lowery,* Case No. 90,698 (issued Feb. 19, 1999)(three appraisers appointed; two filed majority report), and *Stephens and Johnson Operating Co. v. Bayless,* Case No. 94,-620 (issued May 10, 2002). In *Stephens Production Co. v. Taylor,* 1997 OK CIV APP 70, 949 P.2d 301, the appellant attempted to challenge the filing of more than one report but failed to preserve the issue for review.

homa Uniform Jury Instruction No. 25.3, delineating the meaning of "just compensation" in eminent domain/condemnation proceedings involving partial takings. This language is required by the Surface Damages Act's § 318.5(F), since proceedings under the Act must be tried in the same manner as condemnation actions. *See Ward Petroleum,* 2003 OK 11, ¶¶ 6–7, 64 P.3d 1113, 1115. Appraisers are instructed to determine fair market value of the land where the lease road and well site are located, and to include in this damage assessment all the injury caused to remaining property by the construction or use of the drilling operation on the land which is actually taken. Diminution in value due to the well location and inconvenience suffered as result of the land's use by the operator are recognized as factors affecting the determination of damages. *See Davis Oil Co. v. Cloud,* 1986 OK 73, ¶ 22, 766 P.2d 1347, 1352.

¶ 18 However, Chesapeake suggests these factors are no longer relevant to surface damages cases because of the decision in *Williams Natural Gas Co. v. Perkins,* 1997 OK 72, 952 P.2d 483. In *Williams,* the Oklahoma Supreme Court held unconstitutional the legislature's designation, in 66 O.S.1991 § 53 (D), of "before-and-after" valuation as the exclusive method to determine just compensation in partial takings cases. *Williams* did *not* hold that the "before and after" diminution in value method is never relevant in a takings case; rather, it held that the legislature could not sidestep the constitutional directive of Art. 2, § 24, by imposing a different valuation method in partial takings cases. Since *Williams,* the Oklahoma Supreme Court has continued to cite and rely on *Davis* in surface damage decisions. *See*

*Ward Petroleum,* 2003 OK 11, 64 P.3d 1113 (majority and dissenting opinions); *YDF Inc. v. Schlumar Inc.,* 2006 OK 32, 136 P.3d 656 (dissenting opinion).

### 3. Evidence Concerning Damages for Off–Site Parking

██ ¶ 19 Chesapeake's final proposition of error is that the allowance of $1,750 in damages for off-site parking is not supported by competent evidence. We disagree.

¶ 20 Appraiser Story testified that he personally observed Chesapeake vehicles being parked off the well location, and personally observed physical damage as a result of same. In addition, Chesapeake's witness, Ron Everett, admitted that he had seen off-site parking by Chesapeake, although he differed with the valuation of damage attributable to it. We find sufficient competent evidence in the record to support the trial court's decision to confirm the majority appraisal's report and valuation of surface damages.

### CONCLUSION

¶ 21 For the reasons set forth above, we affirm the decision of the trial court.

¶ 22 AFFIRMED.

GOODMAN, J., and REIF, J., concur.