OSCN Found Document:CHESAPEAKE OPERATING INC. v. KAST TRUST FARMS

 
 
 

 
 
 
 
 
 
 
 

 


 
 
 
 
 
 


 
 OSCN navigation


 
 
 Home

 
 Courts

 
 
 Court Dockets
 

 
 Legal Research

 
 Calendar

 
 Help
 
 





 
 
 
 Previous Case

 
 Top Of Index

 
 This Point in Index

 
 Citationize

 
 Next Case

 
 Print Only
 
 
 
 
 

 
 
 
 CHESAPEAKE OPERATING INC. v. KAST TRUST FARMS
2015 OK CIV APP 5
Case Number: 109914: Consol. w/109916
Decided: 10/16/2013
Mandate Issued: 01/23/2015
DIVISION IV
THE COURT OF CIVIL APPEALS OF THE STATE OF OKLAHOMA, DIVISION IV
Cite as: 2015 OK CIV APP 5, __ P.3d __

 

CHESAPEAKE OPERATING INC., Plaintiff/Appellant/Counter-Appellee,
v.
KAST TRUST FARMS, Defendant/Appellee/Counter-Appellant.



APPEAL FROM THE DISTRICT COURT OF WASHITA COUNTY, OKLAHOMA

HONORABLE CHRISTOPHER S. KELLY, TRIAL JUDGE



AFFIRMED IN PART, REVERSED IN PART, AND REMANDED WITH DIRECTIONS



Bradley A. Gungoll, GUNGOLL, JACKSON, COLLINS, BOX & DEVOLL, P.C., Oklahoma City, Oklahoma, for Chesapeake Operating, Inc.
Donelle H. Ratheal, David W. Smith II, RATHEAL & ASSOCIATES, P.C., Oklahoma City, Oklahoma, for Kast Trust Farms




JERRY L. GOODMAN, JUDGE:


¶1 Chesapeake Operating Inc. (Chesapeake) appeals the trial court's August 30, 2011, order denying its motion for new trial or remittitur of a March 21, 2011, journal entry entered after jury trial under the Surface Damages Act, 52 O.S.2011, § 318.2 et seq. Kast Trust Farms (Trust) also appeals the March 21, 2011, journal entry.[1] Both parties appeal a December 6, 2011, order granting Trust's motion for an attorney's fee and costs. Based upon our review of the facts and applicable law, we reverse and remand with directions.

FACTS

¶2 On October 16, 2009, Chesapeake sent via certified mail a notice of entry letter to Trust, via Dr. Ronald George Wollmann (Dr. Wollmann), notifying it of its intent to drill an oil and gas well on its property: the SW/4 Sec. 22, T-11N, R-17W, Washita County, Oklahoma. Dr. Wollmann is the settler, trustee, and sole beneficiary of the Trust. The body of the letter contained an error in the location of the proposed well: it provided the well would be drilled and operated approximately 200 feet from the South line and 990 feet from the East line of the referenced section. However, it should have stated the "West line" rather than the East Line. It further provided construction was estimated to begin on or before October 30, 2009. The parties began negotiations regarding damages to the surface.

¶3 On December 9, 2009, Chesapeake sent Trust a second letter with the correct well location and an estimated construction date of December 21, 2009. Dr. Wollmann expressed concerns regarding the location and environmental impact of the drilling to the surface, noting a winery and vineyard were on the property. Negotiations between the parties subsequently failed, and Chesapeake filed a petition to appoint appraisers on March 11, 2010. Trust filed a counterclaim on April 9, 2010, asserting a claim for treble damages.

¶4 Chesapeake subsequently notified Trust that it was moving the wellbore 20 feet from its original location. Chesapeake entered the property on March 15, 2010.

¶5 On May 5, 2010, the report of the appraisers was filed, finding the diminution in value of the property to be $28,000.00. On June 8, 2010, Chesapeake filed an exception, which it subsequently withdrew. Additional pre-trial motions were filed by the parties including Trust's demand for jury trial, which was ultimately held on January 25, 2011.[2] The jury returned a verdict for Trust in the amount of $86,750.00. A journal entry of judgment was entered on March 21, 2011.

¶6 On March 30, 2011, Chesapeake filed a motion for new trial or for remittitur. By order filed on August 30, 2011, the court denied Chesapeake's motion as well as Trust's request for treble damages. Trust subsequently filed a motion for an attorney's fee and costs, which the court granted in the amount of $45,000.00. Both parties appeal.

STANDARD OF REVIEW

¶7 A motion for new trial is addressed to the trial court's sound discretion and will not be reversed on appeal unless it is apparent the trial court erred on a pure question of law or acted arbitrarily. Barringer v. Baptist Healthcare of OK, 2001 OK 29, ¶ 5, 22 P.3d 695, 698. The appellate court indulges every presumption in favor of the trial court's decision. Capshaw v. Gulf Ins. Co., 2005 OK 5, ¶ 7, 107 P.3d 595, 600.

¶8 We review the reasonableness of an attorney's fee award using the abuse of discretion standard. However, the question of whether a fee is authorized by law presents a question of law, which is reviewed de novo. In a de novo review, this Court affords a "non-deferential, plenary and independent review" of the trial court's legal ruling. Boston Ave. Mgmt., Inc. v. Associated Res., Inc., 2007 OK 5, ¶ 10, 152 P.3d 880, 884-885.

ANALYSIS

I. Chesapeake's Appeal

¶9 On appeal, Chesapeake asserts several propositions of error, which will be combined and addressed as follows.

¶10 First, Chesapeake asserts the trial court erred by admitting evidence of personal nuisance-related damages immaterial to the property's diminution in value.

¶11 The Surface Damage Act (Act), 52 O.S.2011, § 318.2 et seq., permits the recovery of damages "which the surface owner has sustained or will sustain by reason of entry upon the land and by reason of drilling or maintenance of oil or gas production on the land." Ward Petroleum Corp. v. Stewart, 2003 OK 11, ¶ 6, 64 P.3d 1113, 1115 (citing 52 O.S.2001, § 318.5(C)). The damage standard under the Act is the "diminution in the fair market value of the surface property resulting from the drilling and maintenance operations." Id., at ¶ 6, 64 P.3d at 1115 (citing Davis Oil Co. v. Cloud, 1986 OK 73, ¶ 22, 766 P.2d 1347, 1352). This measure of damages is appropriate because the action "partakes of the nature of a condemnation action by virtue of 52 O.S. § 318.5(F), which provides that a trial under the Act shall be conducted and judgment entered in the same manner as railroad condemnation cases." Ward, 2003 OK 11, at ¶ 6, 64 P.3d at 1115. See also Dyco Petroleum Corp. v. Smith, 1989 OK 51, 771 P.2d 1106 (an action under the Act clearly partakes of the nature of a condemnation action).

¶12 In Davis, the Oklahoma Supreme Court identified factors a jury may consider in determining damages under the Act:



1. The location or site of the drilling operation;
2. The quality and value of the land used or disturbed by said drilling operations;
3. Incidental features resulting from said drilling operations which may affect convenient use and further enjoyment;
4. Inconvenience suffered in the actual use of the land by operator;
5. Whether the damages, if any, are temporary or permanent in nature;
6. Changes in physical condition of the tract;
7. Irregularity of shape and reduction, or denial, of access; and
8. The destruction, if any, of native grasses, and/or growing crops, if any, caused by drilling operation.

However, evidence relating to these factors may be considered only as it affects the fair market value of the land.



Id., at ¶ 22, 766 P.2d at 1352.

¶13 Accordingly, a jury may consider the personal inconvenience suffered by a surface owner. However, personal inconvenience is not an additional or separate element of damages and may only be considered insofar as it affects the fair market value of the surface estate. Id., at ¶ 24, 766 P.2d at 1353. Purely personal inconvenience is not compensable under the Act. Dyco, 1989 OK 51, at ¶ 9, 771 P.2d at 1008.

¶14 The record provides Dr. Wollmann testified to various elements of personal inconvenience including truck traffic, noise, and dust. Chesapeake objected. The trial court denied the objections and permitted the testimony. The court subsequently, and properly, instructed the jury that it may consider the Davis factors, including personal inconvenience, but only as it affects the fair market value of the surface estate. We find no error. There is no indication in the record that the jury awarded purely personal nuisance-related damages. Accordingly, this assertion of error is denied.

¶15 For its next proposition of error on appeal, Chesapeake asserts the trial court erred in two (2) evidentiary related matters: the admission of Trust's expert appraiser Rene Bagley's redacted report and her testimony regarding the same. Chesapeake notes the court granted its motion in limine, excluding evidence relating to animal feeding operations. Chesapeake contends that even though the court redacted this material from her expert report, Bagley relied on the material in arriving at her ultimate valuation of the property. Thus, her report and testimony were the product of incompetent evidence and should have been excluded. Further, Chesapeake asserts the admission of the report was error because the evidence and methodology she used was irrelevant, misleading, unreliable, and violated Daubert v. Merrell Dow Pharm, Inc., 509 U.S. 579 (1993), and Christian v. Gray, 2003 OK 10, 65 P.3d 591.

¶16 Trust disagrees, noting Chesapeake did not raise the Daubert argument until after trial and therefore waived any error on appeal. In addition, Trust asserts Bagley provided a thorough, carefully written valuation of the surface, noting its special uses, size, and location of the well site in relation to the home site. Thus, the court correctly admitted Bagley's redacted report and testimony.

¶17 Trial court decisions concerning admission of evidence are reviewed on appeal pursuant to an abuse of discretion standard. Myers v. Missouri Pac. R. Co., 2002 OK 60, ¶ 36, 52 P.3d 1014, 1033. In addition, Daubert creates a gate keeping function for the trial court regarding the admission of an expert's evidence, when challenged. It does not enable a party to allow the expert's testimony to be admitted and then attempt to discredit that testimony on Daubert grounds after all the evidence is in. The function of this Court is to correct demonstrated error. "Unless there is presentation of the question to the trial court and a subsequent erroneous determination of that question, there is no error to correct on appeal." Marlin Oil Corp. v. Barby Energy Corp., 2002 OK CIV APP 92, ¶ 8, 55 P.3d 446, 449. By failing to raise a timely Daubert objection to the purported objectionable testimony during trial, Chesapeake waived the error on appeal, in the absence of fundamental error. See Covel, Ind. and as Rep. of the Estate of H.K. Covel, Deceased, v. Rodriquez, et al., 2012 OK 5, 272 P.3d 705.

¶18 Upon our review of the record, we find no fundamental error. Bagley's testimony was not so manifestly unreasonable that its admission constituted fundamental error. Furthermore, we find no abuse of discretion in the admission of Bagley's redacted report and testimony. The trial court properly redacted those portions of the report consistent with its rulings and prohibited her from testifying to animal feeding operations. This proposition of error is therefore denied.

¶19 Chesapeake further asserts the trial court erred by refusing evidence concerning Trust's relationship to Dr. Wollmann. Chesapeake contends Dr. Wollmann is a tenant at will pursuant to 41 O.S.2011, § 1 and is therefore not entitled to compensation.

¶20 We reject this assertion of error. Dr. Wollmann is the grantor, sole trustee, and beneficiary of the Trust. Although Trust owns legal title to the real property, the beneficiary owns equitable title. Panama Processes, SA v. Cities Serv. Co., 1990 OK 66, ¶ 35, 796 P.2d 276, 290. Thus, Dr. Wollmann is not a tenant at will.

¶21 For its next proposition of error, Chesapeake asserts the trial court erred by excluding evidence of previous voluntary transactions between the parties concerning the same or similarly situated property.

¶22 Comparable sales prior to the date of taking are admissible and are often used to aid a fact-finder in determining value. See Oklahoma Transp. Auth. v. George Abdo Trust, 2006 OK CIV APP 11, 130 P.3d 751. "[T]he value of land or interest in realty at a particular time may as a general rule be proved by evidence of voluntary sales of similar property in the vicinity made at or about the same time." Coogan v. Arkla Expl.Co., 1979 OK 6, ¶ 12, 589 P.2d 1061, 1063. If a landowner can show that a sale of land was voluntary, it does not per se taint the sale simply because the party who purchased the land had the power of condemnation. At most, it simply raises a rebuttable presumption with the burden on the landowner to show a voluntary sale. However, "the amount of money [another landowner] had received from the [condemner] for settling his claim against the [condemner], was incompetent and inadmissible." Oklahoma Turnpike Auth. v. Deal, 1965 OK 57, ¶ 19, 401 P.2d 508, 512

¶23 The admission of this evidence is a matter left largely to the discretion of the trial court, and unless that discretion is abused, the court's ruling will not be disturbed. State of Okla. ex rel. Dept. of Transp. v. Little, 2004 OK 74, ¶ 11, 100 P.3d 707, 712.

¶24 In the present case, the trial court granted Trust's motion to exclude evidence of voluntary transactions between the parties on the same and similarly situated properties. However, it clarified its ruling to permit Chesapeake to reference the prior transactions if its expert had utilized them in arriving at his appraisal figure. Because Chesapeake's expert did not utilize the prior transactions in arriving at his diminution in value figure, Chesapeake was precluded from introducing this evidence at trial. We find no abuse of discretion and deny this assertion of error.

¶25 Next, Chesapeake contends the trial court erred by giving instructions 5, 11, and 12. The test for error in instructions is whether the jurors were probably misled, thereby reaching a different conclusion than they would have reached but for the questioned instructions. Mitchell v. Griffin Television, L.L.C., 2002 OK CIV APP 115, ¶ 33, 60 P.3d 1058, 1067. A verdict will not be disturbed on appeal where, as a whole, it appears that the instructions fairly represent the law applicable to the issues presented by the pleadings and the evidence. Smith v. U.S. Gypsum Co., 1980 OK 33, ¶ 24, 612 P.2d 251, 256.

¶26 Instruction 5 states:

TEMPORARY OR PERMANENT INJURY TO LAND



You are advised that damages to property can be either temporary or permanent in nature.

Temporary damages are those damages which are of a temporary character and which can be corrected. The measure of damages for temporary damages to land would be the cost to restore the land to its former condition, but only if this cost is less than the diminution (decrease) in fair market value of the land. Where oil and gas drilling operations result in temporary damage to land, and the cost to restore the land is greater than the loss in value, then the diminution (decrease) in value is the correct measure of damages.

Permanent damages are those damages which are of a permanent character and which cannot be corrected. The measure of recovery for such damages is the diminution (decrease) in value of the land.

There may be temporary damage to one part of a parcel and permanent damage to another part and it is proper to allow recovery for both. However, no double recovery is allowed for the same injury. In other words, both temporary and permanent damages may be recovered in the same action but it is improper to allow a double recovery for the same item of damage.



¶27 Chesapeake asserts this instruction is misleading, confusing, and prejudicial because no evidence of temporary or permanent injury to land was introduced and the instruction fails to state that an award of damages, whether temporary or permanent, cannot exceed the total diminution in value. Trust disagrees, asserting the instruction is proper and evidence of temporary and permanent injury was presented to the jury.

¶28 Upon reviewing this instruction, we find it adequately instructs the jury on the law. Further, the record provides evidence of temporary and permanent injury was presented to the jury for its consideration. Thus, we find no error.

¶29 Instruction 11 states:



FACTORS WHICH MAY BE CONSIDERED IN DETERMINING FAIR MARKET VALUE AFTER ENTRY UPON THE LAND FOR THE PURPOSES OF THE DRILLING AND MAINTENANCE OF THE SUBJECT WELL

In determining the fair market value of the surface property after Chesapeake's entry upon the land you may only consider factors and evidence which have an effect upon the value of the property in the assessment of damages. Factors which you may consider in determining damages include, but are not limited to, the following, if shown by a preponderance of the evidence (i.e., greater weight of the evidence):

a) The location or site of the drilling operation.

b) The quality and value of the land used or disturbed by said drilling operations.

c) Incidental features resulting from said drilling operations which may affect convenient use and further enjoyment.

d) Inconvenience suffered in the actual use of the land by Chesapeake.

e) Whether the damages, if any, are temporary or permanent in nature.

f) Changes in physical condition of the tract.

g) Irregularity of shape and reduction, or denial, of access.

h) The destruction, if any, of native grasses, and/or growing crops, if any, caused by drilling operations.

These are not to be considered as individual items of damages, but as they may, in your opinion, affect the fair market value of the tract after the drilling operations in this case.



¶30 Chesapeake contends this instruction fails to instruct the jury that double recovery is prohibited and that the sum total of all damages awarded cannot exceed the total diminution of value.

¶31 We find no error. Instruction 11 provides the listed factors are merely factors for the jury to consider and are not individual items of damages. In addition, the jury was previously instructed that double recovery was prohibited and that damages cannot exceed the total diminution of the property. See CNA Ins. Co. v. Krueger, Inc., of Tulsa, 1997 OK 142, ¶ 15, 949 P.2d 676, 679 ("In reviewing the propriety of given instructions, the instructions are to be viewed in whole rather than separately.") Thus, we find no error in this Instruction.

¶32 Instruction 12 states:

STIGMA



In considering the fair market value of the surface property after Chesapeake's entry upon the land, you may consider the stigma caused from having the Kast Trust # 1-22H Well on the property. Stigma refers to the lack of input afforded to the landowner in designating the location of the well site and the perceived limitations of the use of the property caused by the location of the well.



¶33 Chesapeake contends the court erroneously instructed the jury to consider stigma as an item of damage contrary to Davis, 1986 OK 73, 766 P.2d 1347. Trust disagrees, asserting stigma is an appropriate factor to consider, citing Chesapeake Operating, Inc. v. Loomis, 2007 OK CIV APP 55, 164 P.3d 254.

¶34 The damage standard intended by the Legislature under the Act is the diminution in value of the entire property which the appraisers may assess by considering the factors set forth in Davis. See also J.C. Houck v. Hold Oil Corp., 1993 OK 166, 867 P.2d 451 (the proper measure of damages under the Act is the difference in the fair market value of the entire tract immediately before the drilling operations and the fair market value of the tract immediately after the drilling operations)(superseded by statute). As previously stated, the Court in Davis approved an instruction that listed factors a jury may consider in arriving at the diminution in value of the property. These factors are not separate items of damage, but may be considered solely as they have an effect upon the diminishment in value of the surface estate before and after drilling operations. Davis, 1986 OK 73, at ¶ 23, 766 P.2d at 1352; J.C. Houck, 1993 OK 166, at ¶ 41, 867 P.2d at 462.

¶35 We agree with Chesapeake that the trial court erroneously instructed the jury on stigma. The Davis factors do not permit consideration of stigma and its affect upon the diminishment in value of the surface estate. In addition, a plain reading of Instruction 12 provides the court instructed the jury there was stigma associated with the well on Trust's property, removing any discretion from the jury.

¶36 Accordingly, we find Instruction 12 was an error of law and it appears reasonably certain that the jury was misled by it. The jury returned a verdict determining the diminution in value of the property to be $86,750.00. This amount was $58,750.00 more than the appraisal submitted by the court-appointed appraisers and $16,550.00 more than Trust's own expert's appraisal of $70,200.00. Thus, the jury's verdict cannot stand. The trial court should have granted Chesapeake's motion for new trial. The trial court's judgment is reversed and the matter is remanded for a new trial.

¶37 Chesapeake further asserts the trial court erred by requiring it to present its evidence first at trial despite Trust having the burden of proof, in contravention to 12 O.S.2011, § 577, and in the introduction of over 70 red-hued photographs. Although this Court finds the previous error dispositive, we examine these allegations of error and find merit to Chesapeake's assertions.

¶38 Although Trust acknowledges it bears the ultimate burden of proof at trial, i.e., proving the land taken is worth more than the appraisers' valuation, it disagrees the court erred, asserting the trial court acted within its discretion regarding the order of evidence and that Chesapeake was not prejudiced by the court's action.

¶39 Title 12 O.S.2011, § 577 prescribes the order of a jury trial. Section 577 provides, in relevant part:



When the jury has been sworn, the trial shall proceed in the following order, unless the court for special reasons otherwise directs: .

Third. The party on whom rests the burden of the issues must first produce his evidence; after he has closed his evidence the adverse party may interpose and file a demurrer thereto, upon the ground that no cause of action or defense is proved. If the court shall sustain the demurrer, such judgment shall be rendered for the party demurring as the state of the pleadings or the proof shall demand. If the demurrer be overruled, the adverse party will then produce his evidence. . (Emphasis added).[3]



See also Lierly v. Tidewater Pet. Corp., 2006 OK 47, ¶ 27, 139 P.3d 897, 905 ("After the jury has been sworn, the order, in summary, includes statements of the case first by the party with the burden of proof and then the adverse party; presentation of the evidence first by the party with the burden of proof and then the adverse party; instructions to the jury; and arguments to the jury first by the party with the burden of proof and then the adverse party"). Section 577 makes the prescribed order of trial mandatory on the trial judge unless the court authorizes a change upon a "special reason." Id., at ¶ 28, 139 P.3d at 905.

¶40 In the present case, the court addressed the order of presentation of evidence prior to trial. The court noted the burden of proof was on Trust. Trust requested Chesapeake present first because it was listed as "plaintiff" and it did not want to confuse the jury. Chesapeake disagreed, asserting the jury would not be confused by the labels "plaintiff" and "defendant" and that Trust should proceed first to see if it met its ultimate burden. The court disagreed, stating Chesapeake would present its case first: "[I] don't want to mess up the way in which this is set out. I understand who may have the burden and who doesn't, but we're going to proceed with Chesapeake as plaintiff and [Trust] as the defendant and [Chesapeake will go first.]"

¶41 Section 577 clearly prescribes the order in which a trial shall proceed unless the trial court, for special reasons, directs otherwise. In the present case, the court did not provide a special reason for changing the prescribed order of trial other than stating it did not wish to "mess up the way in which [it was] set out." This is an insufficient "special reason" and was error. Upon remand, the court is instructed to comply with § 577.

¶42 With respect to the photographs, Chesapeake asserts the court erred by permitting over seventy (70) red-hued photographs of the property taken from March through December of 2010 into evidence, asserting they have no probative value and were exceptionally prejudicial given their striking red color. Trust disagrees, asserting any change in color was due to the conversion of the photographs from the original format to pdf format and any error in their admission was harmless.

¶43 The Oklahoma Evidence Code, 12 O.S.2011, § 2101 et seq., allows all relevant evidence to be admitted unless excluded by rules of evidence. Title 12 O.S.2011, § 2401 defines "relevant evidence" as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." However, relevant evidence may be excluded "if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of issues, misleading the jury, undue delay, needless presentation of cumulative evidence, or unfair and harmful surprise." 12 O.S.2011, § 2403. The court must seek a balance of probative value and potential prejudice on the facts of each case. "The injection of irrelevant or otherwise inadmissible evidence is ordinarily not grounds to reverse a jury verdict unless that error was prejudicial." James v. Midkiff, 1994 OK CIV APP 165, ¶ 6, 888 P.2d 5, 6 (citing 12 O.S. § 78; Karriman v. Orthopedic Clinic, 1973 OK 141, 516 P.2d 534). "The test of prejudice is the likelihood the verdict would have been different had the error not occurred measured by the usual criterion of the verdict's support in the evidence." Id. at ¶ 6, 888 P.2d at 6 (citing Karriman, 1994 OK CIV APP 165, at ¶ 6, 516 P.2d at 540). Finally, "the admission of photographs in evidence as an aid to the jury is a matter addressed to the sound discretion of the trial court." Booth Tank Co., 1964 OK 160, ¶ 16, 394 P.2d 493, 497.

¶44 In the present case, Chesapeake cross-examined Dr. Wollmann who admitted the photographs were not representative of the property, i.e., that the red hue was the result of conversion to a pdf format. Because the photographs were not representative of the property and were clearly cumulative, we find the trial court abused its discretion by admitting them.

II. Trust's Counter-Appeal

¶45 For its appeal, Trust asserts the trial court erred in denying its counterclaim for treble damages.

¶46 Title 52 O.S.2011, § 318.9 provides for treble damages:



Upon presentation of clear, cogent and convincing evidence that the operator willfully and knowingly entered upon the premises for the purpose of commencing the drilling of a well before giving notice of such entry or without the agreement of the surface owner, the court may, in a separate action, award treble damages. The issue of noncompliance shall be a fact question, determinable without jury, and a de novo issue in the event of appeal.

Any operator who willfully and knowingly fails to keep posted the required bond or who fails to notify the surface owner, prior to entering, or fails to come to an agreement and does not ask the court for appraisers, shall pay, at the direction of the court, treble damages to the surface owner. .



The burden of proof under § 318.9 is on the party attempting to recover damages. Houck, 1993 OK 166, at ¶ 24, 867 P.2d at 458-59. The party must show not only a violation of § 318.9, but also that the violation was willful on the part of the operator. Id. Appellate review of the trial court's determination is de novo, according no weight to lower tribunal's determination of the issue. Id. at ¶ 23, 867 P.2d at 458.

¶47 In support of its claim for treble damages, Trust asserts Chesapeake failed to provide it with the required statutory notice and follow its own "approximate dates" for entering the land. The record provides on October 16, 2009, Chesapeake issued its first letter, via certified mail, to Dr. Wollmann, trustee, of its intent to enter the surface and drill a well site on or before October 30, 2009. The letter contained an incorrect legal description for the surface. In October of 2009, the parties began negotiations regarding damages to the surface. Other than the initial inadvertent legal error in the October 16, 2009, letter, the record provides the parties always referred to the correct legal description in their negotiations with each other. On December 9, 2009, Chesapeake issued a second letter to Dr. Wollmann notifying him of its intent to enter and drill on or about December 21, 2009. The letter contained the correct legal description for the surface, although it was not sent via certified mail. Negotiations were terminated on March 10, 2010, and Chesapeake's petition to appoint appraisers was filed on March 11, 2010. On March 15, 2010, Chesapeake entered the site. On April 9, 2010, Trust filed a counterclaim, seeking treble damages. Finally, on April 16 and May 12, 2012, Chesapeake sent, via certified mail, two (2) letters changing the location and/or drilling date of the well bore.

¶48 As we view this evidence under the de novo standard, we do not believe there is clear, cogent, and convincing evidence that Trust met its burden to prove Chesapeake willfully and knowingly entered the premises for the purpose of commencing the drilling of a well before giving Trust notice. Although the initial notice contained an incorrect legal description for the surface, the record provides this error was corrected and that Dr. Wollmann had notice of the correct description throughout negotiations. Further, we do not believe the failure to send the second notice by certified mail is sufficient to satisfy § 318.9's requirements for treble damages. Accordingly, we affirm the trial court's March 21, 2011, order denying Trust treble damages.

III. An Attorney's Fee and Costs

¶49 Both parties appeal the court's award of fees and cost to Trust. Because the matter is remanded to the trial court for a new trial, the December 6, 2011, order granting fees and costs to Trust is reversed.


¶50 AFFIRMED IN PART, REVERSED IN PART, AND REMANDED WITH DIRECTIONS.



THORNBRUGH, P.J., concurs, and RAPP, J., concurs in part and dissents in part.





RAPP, J., concurring in part and dissenting in part:



¶1 I concur in the Majority's decision regarding Chesapeake's appeal. I dissent to the Majority's decision in the Trust's counter-appeal.



FOOTNOTES


[1] By order filed on September 30, 2011, the Oklahoma Supreme Court ordered case No. 109,914 and No. 109,916 to be consolidated under surviving case No. 109,914.



[2] Pursuant to 52 O.S.2011, § 318.5(F), "Either party may ... file with the clerk a written demand for a trial by jury, in which case the amount of damages shall be assessed by a jury."



[3] Unless contrary to clear legislative intent, the word "shall" in a statute signifies a mandatory command rather than a permissive directive. Keating v. Edmondson, 2001 OK 110, ¶ 13, 37 P.3d 882, 888.









 Citationizer© Summary of Documents Citing This Document
 
 
 Cite
 Name
 Level
 
 
 None Found.
 
 
 Citationizer: Table of Authority
 
 
 Cite
 Name
 Level
 
 
 Oklahoma Court of Civil Appeals Cases
 Cite
Name
Level

 1994 OK CIV APP 165, 888 P.2d 5, 66 OBJ 117, James v. Midkiff
Discussed at Length
 2002 OK CIV APP 92, 55 P.3d 446, MARLIN OIL CO. v. BARBY ENERGY CORP.
Discussed
 2002 OK CIV APP 115, 60 P.3d 1058, MITCHELL v. GRIFFIN TELEVISION, L.L.C.
Discussed
 2006 OK CIV APP 11, 130 P.3d 751, OKLAHOMA TRANSPORTATION AUTHORITY v. THE GEORGE ABDO TRUST
Discussed
 2007 OK CIV APP 55, 164 P.3d 254, CHESAPEAKE OPERATING, INC. v. LOOMIS
Discussed
Oklahoma Supreme Court Cases
 Cite
Name
Level

 1986 OK 73, 766 P.2d 1347, 57 OBJ 2885, Davis Oil Co. v. Cloud
Discussed at Length
 1989 OK 51, 771 P.2d 1006, 60 OBJ 900, Dyco Petroleum Corp. v. Smith
Discussed
 1990 OK 66, 796 P.2d 276, 61 OBJ 1934, Panama Processes, S.A. v. Cities Service Co.
Discussed
 1993 OK 166, 867 P.2d 451, 65 OBJ 23, Houck v. Hold Oil Corp.
Discussed at Length
 2001 OK 29, 22 P.3d 695, 72 OBJ 1046, BARRINGER v. BAPTIST HEALTHCARE OF OKLAHOMA
Discussed
 2001 OK 110, 37 P.3d 882, 72 OBJ 3672, KEATING v. EDMONDSON
Discussed
 1964 OK 160, 394 P.2d 493, BOOTH TANK CO. v. SYMES
Discussed
 1965 OK 57, 401 P.2d 508, OKLAHOMA TURNPIKE AUTHORITY v. DEAL
Discussed
 2002 OK 60, 52 P.3d 1014, MYERS v. MISSOURI PACIFIC RAILROAD CO.
Discussed
 1973 OK 141, 516 P.2d 534, KARRIMAN v. ORTHOPEDIC CLINIC
Discussed
 2003 OK 10, 65 P.3d 591, CHRISTIAN v. GRAY
Discussed
 2003 OK 11, 64 P.3d 1113, WARD PETROLEUM CORP. v. STEWART
Discussed at Length
 2004 OK 74, 100 P.3d 707, STATE ex rel. DEPT OF TRANSPORTATION v. LITTLE
Discussed
 2005 OK 5, 107 P.3d 595, CAPSHAW v. GULF INSURANCE COMPANY
Discussed
 2006 OK 47, 139 P.3d 897, LIERLY v. TIDEWATER PETROLEUM CORPORATION
Discussed
 2007 OK 5, 152 P.3d 880, BOSTON AVENUE MANAGEMENT, INC. v. ASSOCIATED RESOURCES, INC.
Discussed
 2012 OK 5, 272 P.3d 705, COVEL v. RODRIGUEZ
Discussed
 1980 OK 33, 612 P.2d 251, Smith v. U.S. Gypsum Co.
Discussed
 1979 OK 6, 589 P.2d 1061, COOGAN v. ARKLA EXPLORATION CO.
Discussed
 1997 OK 142, 949 P.2d 676, 68 OBJ 3827, CNA INSURANCE CO. v. KRUEGER, INC.
Discussed
Title 12. Civil Procedure
 Cite
Name
Level

 12 O.S. 78, Court to Disregard Insignificant Errors
Cited
 12 O.S. 577, Trial Order
Discussed
 12 O.S. 2101, Short Title
Cited
 12 O.S. 2401, Relevant Evidence Defined
Cited
 12 O.S. 2403, Exclusion of Relevant Evidence on Grounds of Prejudice, Confusion or Cumulative Nature of Evidence
Cited
Title 41. Landlord and Tenant
 Cite
Name
Level

 41 O.S. 1, Presumption of Tenant at Will
Cited
Title 52. Oil and Gas
 Cite
Name
Level

 52 O.S. 318.2, Definitions
Discussed
 52 O.S. 318.5, Negotiating Surface Damages - Appraisers - Report and Exceptions Thereto - Jury Trial
Discussed at Length
 52 O.S. 318.9, Violation of Act - Damages
Cited